## Van Meter v. Burns.

### Hazelip, et al. v. Marton, et al.

(Decided June 5, 1917.)

## Appeals from McCracken Circuit Court.

1. Elections—Corrupt Practice Act—Promise of Office or Position in consideration for Support.—The corrupt practice act (Acts 1916, chapter 13, page 53) does not make it unlawful for a candidate to agree to appoint a particular person to an office or position, or to support a particular person for any office or position, in consideration of the influence or support of such person in the election.

2. Elections—Corrupt Practice Act—Advertising—Employment of Persons to Distribute Announcement Cards.—The corrupt practice act (Acts 1916, chapter 13, page 53) does not prohibit the employment by a candidate of a reasonable number of persons to distribute his announcement cards and the payment to them of a reasonable compensation for such service. However, if it appears that the number of persons so employed, or the compensation paid them, is so disproportionate to the service re-

quired as to justify the conclusion that such persons were not employed in good faith to perform such service, but that their pretended compensation was paid them merely for the purpose of securing their votes or influence in the election, then such employment is prohibited by the statute.

3. Elections—Corrupt Practice Act—Hiring of Vehicles to Take Voters to Polls.—The corrupt practice act (Acts 1916, chapter 13, page 53) does not prohibit a candidate's hiring vehicles for the purpose of getting his friends to the polls, unless the support of the person from whom the vehicle is hired is a part of the consideration, or the compensation so large as to justify the inference that it was paid for the purpose of obtaining his support or influence in the election.

J. G. HUSBANDS, OSCAR KAHN, EATON & BOYD and J. P. HOBSON & SON for appellants.

JOHN K. HENDRICK, W. A. BERRY, F. N. BURNS, DAVID BROWNING, IRENE KRONE and F. E. GRAVES for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

At the general election held in the city of Paducah in the month of November, 1916, a mayor and three commissioners were to be elected to fill out unexpired terms in those offices. Appellant, C. L. Van Meter, and appellee, F. N. Burns, were candidates for mayor, while appellants, T. N. Hazelip and R. R. Treadway, and appellees, Don P. Marton, F. E. Graves and W. A. Gardner, together with John R. Scott, who is not a party to this action, were candidates for commissioners. Appellees Burns, Marton, Graves and Gardner received substantial majorities over their opponents and were awarded certificates of election by the board of election commissioners. In due time appellant Van Meter brought suit contesting the election of appellee Burns, while appellants Hazelip and Treadway instituted a separate action contesting the election of Marton, Graves and Gardner. After appellees had filed answer denying the allegations of the petition and pleading grounds of contest against appellants, the two actions were consolidated, and on final hearing the petitions were dismissed and appellees given a judgment for costs. From the judgment so rendered these two appeals are prosecuted.

Appellees are charged with violating the provisions of an act to promote pure elections, etc., approved March 13, 1916, and known as the "Corrupt Practice Act." Acts 1916, chapter 13, page 53.

Section 1 of the act prohibits, under severe penalties, public service and other corporations, their officers and agents, from contributing money or other thing of value towards the nomination or election of any state, county, city, town, municipal or district officer.

Section 2 prohibits corporations, companies or individuals from coercing their employes to vote or refrain from voting for any particular candidate or candidates.

Section 3 is as follows: ''It shall be unlawful for any person who is a candidate for nomination or election for any state, county, city, town, municipal or district office to expend, pay, promise, loan, or become pecuniarily liable in any way for money, or other thing of value, either directly or indirectly, or to agree or enter into any contract with any corporation, association or person to vote for or support any particular thing or measure in consideration of the vote or support, moral or financial, of any such corporation, association or person, and it shall be unlawful for any corporation, association or person to demand that any candidate for office shall promise or agree in advance or shall make any contract, oral or written, to support any particular individual, thing or measure, in consideration for the vote or the support, financial or moral, of such corporation, or person, in any election, primary or nominating convention, but no expenditure made by any candidate, or others for him, for the purpose of employing and paying clerks and stenographers or for printing and advertising, or in securing suitable halls for public speaking or suitable headquarters, stationery and stamps, or actual traveling expenses, shall be deemed illegal, and any person, corporation, or company violating this section shall be fined in any sum not to exceed $5,000.00, or be imprisoned in the county jail not to exceed six months, or both.''

Section 4 requires every candidate on the fifteenth day before the date for making such nomination, and also on the fifteenth day before the final election, to file with the officer with whom his nomination papers must be filed in case of a primary, and with the chairman of the board authorized to issue the certificates of election after a final election, or with the Secretary of State when nomination is made by caucus or convention for officers of the state at large, or for districts larger than one county, and with the county clerk in all other cases, a statement in writing, subscribed and sworn to by such

candidate, and setting forth in detail each item of expenditure or contribution.

Section 5 imposes the same duty on campaign committees, or any individuals having charge of the candidacy of any person or group of persons, or contributing to the expenses of a campaign for the adoption or rejection of any question submitted to the people for their approval or rejection at any election.

Section 6 imposes on every candidate and every campaign committee, or person or persons in charge of said campaign, the duty of making out a similar itemized statement of expenditures and contributions, within thirty days after the election, caucus, convention or primary election held to fill any office or place for which such person may be a candidate.

Section 7 prohibits officers of boards authorized by law to issue certificates of elections or nomination to issue any such certificates to any person until the statements required by the act shall have been made and filed.

Section 8 imposes a fine not exceeding $500.00 on any person failing to file the statement or statements required by the act.

Section 9 provides, in substance, that no person shall be permitted to qualify as an election officer or receive a certificate of nomination until he shall have filed the statements as provided by the act, and no officer shall receive any salary or emolument for any period prior to the filing of such statements.

Section 10 provides that said statements shall be open to public inspection and copies thereof may be obtained by any person desiring same.

Section 11 is as follows: "In any contest over the nomination or election of any officer mentioned in this act, it may be alleged in the pleadings that the provisions of this act have been violated by the candidate or by others in his behalf with his knowledge, and if it so appears upon the trial of said contest, then said nomination or election shall be declared void, and it is hereby provided that the candidate who has received the next highest number of votes and who has not violated the provisions of this act shall be declared nominated or elected unless it also appears that one of the parties to the contest received a plurality of the votes cast and did not violate the provisions of this act."

Sections 13, 14, 15, 16, 17, and 18 fix the limit of expenditures which may be made by candidates for different offices throughout the state.

Section 19 provides a penalty of not less than $100.00 nor more than $1,000.00 for any violation of the act where no other penalty is provided.

Section 20 provides that the statement of any person testifying in any case pending under the provisions of this act shall not be used against him in any prosecutions or civil proceeding.

By section 21 the grand jury in each county is given full power to investigate any violation of the act.

One of the grounds of contest is that appellees Burns, Marton and Graves promised certain persons offices or positions under the city government in consideration of their support in the election. In some of the states the corrupt practice acts have clear and explicit provisions prohibiting promises of appointment in consideration of the support of the persons to whom the promises are made. The only provision of our act bearing on this question is section 3, above quoted. The first part of that section relates solely to the expenditure, promise, loan, etc., of money or other thing of value. Clearly, "other thing of value" means property or something having an intrinsic value that may be measured in money, and does not include a mere office or position which has none of the qualities of property. That being true, the question turns solely on the construction of the following language: ". . . , or to agree or enter into any contract with any corporation, association or person to vote for or support any particular thing or measure in consideration of the vote or support, moral or financial, of any such corporation, association or person, and it shall be unlawful for any corporation, association or person to demand that any candidate for office shall promise or agree in advance or shall make any contract, oral or written, to support any particular individual, thing or measure, in consideration for the vote or the support, financial or moral, of such corporation, or person, in any election, primary or nominating convention," etc. It will be observed that while it is made unlawful for any corporation, association or person to demand that any candidate for office shall promise or agree in advance or shall make any contract, oral or written, to support any particular individual, thing or measure, in consideration for the vote or the support, financial or

moral, of such corporation, or person, in any election, primary or nominating convention, that part of the language referring to the candidate himself omits the words "any particular individual," and only makes it unlawful for him to vote for or support "any particular thing or measure" in consideration of the vote or support, moral or financial, of any such corporation, association or person. It has been a long established custom in this state for certain candidates for office to announce their deputies or appointees before hand, and for such candidates and prospective deputies or appointees to make their races together. If the legislature had intended to prohibit this practice, a few simple words added to the act would have accomplished that purpose. Instead of doing so, they merely prohibited the candidate from entering into any contract with any corporation, association or person to vote for or support "any particular thing or measure." It is evident, therefore, that the language of the statute was chosen with great care, and that in providing a prohibition against the candidate the words "any particular individual" were purposely omitted. Under these circumstances, we conclude that the legislature never intended to make it unlawful for a candidate to agree to appoint a particular person to an office or position, or to support a particular person for any office or position, in consideration of the influence or support of such person in the election. This conclusion makes it unnecessary to consider the evidence bearing on this phase of the case.

The chief ground of contest is that each of the appellees employed a certain number of persons to distribute his cards among the voters, both on the day of the election and, in some instances, for a few days prior to the election, and paid them for these services. In this connection our attention is called to the fact that section 3 makes it unlawful for any candidate to expend, pay, promise, loan, or become pecuniarily liable in any way for money, or other thing of value, either directly or indirectly, and then concludes with the language: "But no expenditure made by any candidate, or others for him, for the purpose of employing and paying clerks and stenographers or for printing and advertising, or in securing suitable halls for public speaking or suitable headquarters, stationery and stamps, or actual traveling expenses, shall be deemed illegal." It is therefore argued that by prohibiting all expenditures and then specifying

the purpose for which expenditures can be made the act plainly limits the expenditures to those authorized by the language quoted. It is further argued that the distribution of a candidate's announcement cards is in no sense advertising within the meaning of the act, but simply an indirect method of purchasing the influence and vote of the person employed to make such distribution. Since the purpose of advertising is to make one's candidacy and platform known to the voters, we are not inclined to take the narrow view that advertising within the meaning of the statute is confined to mere printing. Of course, a printed advertisement in a newspaper would be effective for the purpose of reaching its readers, but it is a well known fact that there are many voters who do not read newspapers, and in order to reach them other advertising media must be resorted to. Hence, the means usually employed are announcement cards, hand bills, placards, banners, etc. If such announcement cards, hand bills, placards, banners, etc., were merely printed and then laid aside, they would not accomplish the purpose intended. The posting or distribution of such advertising media is just as important, therefore, as their printing. While a portion of this work may be done by the candidate himself, the statute does not contemplate that he should do it all. Hence, we conclude that the employment of a reasonable number of persons and the payment to them of a reasonable compensation for such service are not prohibited by the act in question. However, if it appears that the number of persons so employed, or the compensation paid them, is so disproprotionate to the service required as to justify the conclusion that such persons were not employed in good faith to perform such service, but that their pretended compensation was paid them merely for the purpose of securing their votes or influence in the election, then such employment is prohibited by the statute. It appears in this case that there were about five thousand voters in the city of Paducah and that only a short time elapsed between the primary and the regular election, and a careful consideration of all of the evidence convinces us that neither the number of men employed by appellees to distribute their announcement cards, nor the amount of compensation paid them, is sufficient to justify the conclusion that appellees acted in bad faith. On the contrary, the decided weight of the evidence is to the effect that the persons so employed by each of appellees intended to support him prior

to their employment, and that their support and influence were not given him in consideration of such employment.

Some stress is placed on the fact that one or more of appellees hired an automobile or other vehicle for use in getting the voters to the polls, and it is insisted that this was an expenditure not authorized by the statute. In our opinion, the sole purpose of the statute was to prevent bribery and corruption in elections. Hence, the act is not susceptible of the construction that it prohibits absolutely every expenditure for every purpose except those specified during the time that a person is a candidate for office. The first part of section 3, prohibiting the payment of money, or other thing of value, must be construed in the light of what follows, and, when so construed, is simply prohibition against the payment, promise, etc., of money, or other thing of value, to another in consideration of his vote or support. The state itself is interested in having every voter exercise the right of suffrage. Generally those voters who are corrupt are on hand at every election. Those who do not attend consist usually of the sick, aged or infirm, who cannot attend without assistance, or of business men and farmers, who do not care to lose any time from their business. We, therefore, see no impropriety whatever in a candidate's providing conveyances for the purpose of getting his friends to the polls. To this end he may use his own vehicles, or hire them from another, just so the latter's support is not a part of the consideration, or the compensation so large as to justify the inference that it was paid for the purpose of obtaining his support or influence.

Judgment affirmed.

Whole court sitting.