## WRIGHT *v.* STATE.

## Opinion delivered March 4, 1918.

1. CRIMINAL LAW—ELECTIONS—PRE-ELECTION PROMISE OF CANDIDATE
   TO SECURE OFFICE FOR ANOTHER IF ELECTED.—Under § 18, Act of
   1913, Act 13, p. 48, the requirement of the statute is met, if it be
   alleged and proved that a promise was made by a candidate for office
   to one person that he would attempt to procure an office for that
   person or another, if the person to whom the promise was made,
   would cast his vote for the person making the promise at the forth-
   coming election.

2. CRIMINAL LAW—PRE-ELECTION PROMISE BY CANDIDATE FOR PUBLIC
   OFFICE.—Under Act 13, p. 48, Acts of 1913, a conviction will be
   sustained under proof that appellant, who was a candidate for mayor,
   promised, or gave his word of honor to certain individuals that if
   they would vote and use their political influence for him, he, in turn,
   if elected, would support and vote for one V. for city attorney.

3. CRIMINAL LAW—PRE-ELECTION PROMISE TO GIVE OFFICIAL FAVOR.—
   Act 13, p. 48, Acts of 1913, *held* to cover, not only a promise to give
   an office, position or employment, but to include every official favor
   or kindness that might be within the power of the officer to confer.

4. TRIAL—MISCONDUCT OF COUNSEL—FINE IMPOSED BY COURT.—In a
   criminal prosecution, the court twice imposed fines upon appellant's
   counsel, for cursing in the presence of the court, and for intimating
   that the court was unfair to him in his remarks concerning the im-
   position of the first fine. *Held,* the action of the court was not
   improper nor prejudicial.

Appeal from Sebastian Circuit Court, Fort Smith
district; *Paul Little,* Judge; affirmed.

*A. A. McDonald, Hiner & Hiner, E. H. McCulloch,*
and *Covington & Grant,* for appellant.

1. The demurrer should have been sustained. No
public offense was charged nor proven. 52 Ark. 90; 118
Fed. 757-9.

2. A verdict should have been directed for appel-
lant. No offense was proven.

3. The court erred in its instructions. 13 Ark. 718;
Act No. 13, Acts 1913, section 6.

4. The court erred in its action and remarks as to
Mr. Covington, appellant's attorney, in the presence of
the jury. Its action was prejudicial.

*John D. Arbuckle*, Attorney General, and *T. W. Campbell*, Assistant, for appellee.

*Oglesby, Cravens & Oglesby*, of counsel.

1. The indictment charges a crime and is in the language of the statute. 52 Ark. 90; 118 Fed. 757.

2. There is no error in the instructions.

3. The action and statement of the court were not error.

### STATEMENT OF FACTS.

The city of Fort Smith has a commission form of government under the provisions of the Acts of 1913,* approved February 5, 1913. Section 18 of the act provides, among other things: "It shall be unlawful for any candidate for office, or any officer in such city, directly or indirectly, to give or promise any person or persons any office, position, employment, benefit, or anything of value for the purpose of influencing or obtaining the political support, aid or vote of any person or persons * * *. The failure to comply with its provisions, shall be deemed a misdemeanor and, upon conviction, in a court of competent jurisdiction, the offender shall be fined a sum of not less than fifty ($50.00) dollars nor more than five hundred ($500.00) dollars; and if a candidate is convicted, in addition to the fine, the office to which he is elected shall become vacant."

From a judgment of conviction against the appellant for violation of the above statute he duly prosecutes this appeal. The indictment, omitting the caption and conclusion, is as follows: "The said J. H. Wright in the County, District and State aforesaid on the 3rd day of April, 1917, then and there being a candidate for Mayor of the city of Fort Smith, Arkansas, at the general election to be held in said city on the 3rd of April, 1917, for the election of a Mayor and other city officers, unlawfully for the purpose of influencing and obtaining the support, aid and votes of Barney Dunn, Jim Burke and others whose names are to the Grand Jury unknown, each

_____
*Act 13, page 48, Acts 1913 (Reporter).

of whom being duly qualified electors and entitled to vote for Mayor at said election, did then and there agree, undertake and promise the said Barney Dunn and Jim Burke and each of them that he, the said J. H. Wright, would use his influence in behalf of and would vote for and support John H. Vaughan for city attorney of the city of Fort Smith, which said city attorney was to be selected and chosen by the majority vote of the Mayor and City Commissioners elected at such city election to be held in said city as aforesaid on the 3rd day of April, 1917, at which election of city attorney the said J. H. Wright, if elected Mayor, would be entitled to vote, and he, the said J. H. Wright, did directly and indirectly for the purpose of securing the votes, support and influence of the said Barney Dunn, Jim Burke, and others whose names are to the grand jury unknown, each being a legal voter at such city election unlawfully promise to support and vote for the said John H. Vaughan for city attorney of Fort Smith.''

At the primary election for mayor, under the above statute, the appellant and one Bourland were the two highest candidates, and their names were placed on the ballot as the two opposing candidates at the general election.

Barney Dunn testified that he, and Frank Coffey and Jim Burke, went to see Mr. Wright at his home. It was about eight o'clock at night, Mr. Wright was sick in bed with a sprained ankle. He told Mr. Wright that he had the fight of his life on to succeed in winning the election for mayor; and this committee was out there in the interest of Vaughan for city attorney; that witness understood that the law was such that he—Wright—could not make a promise, but that all the committee wanted was his word of honor that he would be for Mr. Vaughan for city attorney if the committee would lend their influence and pull him over in the mayor's race. Wright said that ''Vaughan was a good man, and Mr. Vaughan would be his choice, and he would stick to Vaughan through thick and thin.'' Mr. Burke propounded the

question to him afterwards, ''Well, now, there is a crowd waiting for us, will we report favorably to our crowd that you will be for Mr. Vaughan?'' Mr. Wright answered, ''Yes, sir; and if Mr. Vaughan is elected, he will have to dig into the paving question, whatever it is.'' The witness further testified, ''I got his word of honor he was. to stick to John Vaughan. Yes, sir, I used my influence on lots of other voters on that same support when we came back from Mr. Wright's and reported; they all took Mr. Wright up and supported him.'' Answering the inquiry of Kelléy, Hinch, and others in the crowd when witness returned from the interview with Wright, witness said the result was favorable, saying, ''Mr. Wright will be for Mr. Vaughan all the way through.'' ''That was our report when we got back down there and they were to get behind Mr. Wright and put him over.''

Witness further testified that he talked to Litchty and others ''and got them all to support Mr. Wright on condition that his support went to Mr. Vaughan. That was his word of honor to us. I think I told John Vaughan that we had Mr. Wright's word of honor that he would be for him.''

The testimony of Jim Burke corroborated substantially the testimony of Dunn. He said that he went to see Wright on behalf of John Vaughan, and after the interview with Wright they reported to John Vaughan that night. ''We told him Mr. Wright talked favorably of his candidacy and gave every assurance that he would make him city attorney.'' Witness was asked: ''You didn't go out there to get any promise, did you?'' and answered, ''That is practically what we went for.'' Witness further stated that they did not exact from Mr. Wright an out and out promise, but that they got a verbal promise. Witness was asked: ''What did he say?'' and answered, ''I can't just state the words he said. Barney talked along these lines: He said, ''If you will agree to make John Vaughan city attorney we'll get back and report to our people favorably; get behind you and try to elect you.'' Of course when Mr. Coffey approached Mr.

Wright on the subject, he says: "John Vaughan suits me fine." I think those are the exact words he used. That is all he said to Barney Dunn. Barney asked him if we could go back and report favorable. He said, "Yes."

Vaughan, among other things, testified he voted for Wright in the general election for mayor of Fort Smith. Witness says he would not have voted for him had it not been for the report that Jim Burke and Barney Dunn and Frank Coffey brought back "that he would be for me for city attorney." "I did not know that it was a violation for me to vote for him; I knew it was a violation for him to make a promise. He didn't make any promise to me before the election and never made any promise to me at all; none whatever."

The appellant in his testimony denied that he ever made any pre-election promise to vote for John Vaughan for city attorney in the event he was elected mayor. He testified he saw Barney Dunn, Jim Burke, and Frank Coffey on the night mentioned in the testimony of Dunn and Burke. Repeating part of the conversation appellant testifies, "Barney Dunn says, 'Well, we want to know or to find out how you feel toward John Vaughan.' " Appellant replied, "I always did like John Vaughan; I think he is all right." That's really all of the conversation there was, except Barney says, "Well, we will go and see the other fellow," and away they went.

Witness further states, Barney Dunn said he had come for no promise but wanted to ascertain witness' feeling toward John Vaughan. Witness made no promise whatever. Witness denies categorically the testimony of Dunn and Burke to the effect that he promised them that if they would vote for and use their influence for witness that the witness in return would vote for John Vaughan for city attorney. Witness was not asked if they might report back to the crowd favorably and did not say in reply, "Yes, you can."

The court, of its own motion, instructed the jury that "if the defendant, while a candidate for the office of mayor

of the city of Fort Smith, Arkansas, at the election to be held April the 3rd, 1917, for the purpose of influencing or obtaining the political support, aid or vote of Barney Dunn, Jim Burke, and others, did either directly or indirectly promise the said Barney Dunn and Jim Burke, that he would use his influence in behalf of and would support and vote for John H. Vaughan as a candidate for city attorney, a position to be filled by the mayor and commissioners of said city of Fort Smith, and in which election or selection of said city attorney, the said defendant, if elected, would be entitled to vote and that said promise was given either directly or indirectly for the purposes hereinabove stated, then you should find the defendant guilty as charged, otherwise, you should acquit him.''

The court at the instance of appellant instructed the jury as follows: ''Before you can find the defendant guilty you must find from the evidence beyond a reasonable doubt that the defendant did promise, directly or indirectly, to give John Vaughan an office, or position, or employment, or benefit, or anything of value for the purpose of influencing or obtaining the political support, aid or vote of Barney Dunn and Jim Burke, or either of them, at the election for mayor to be held in the city of Fort Smith.''

And further instructed: ''You are instructed by the word 'promise' is meant a declaration, verbal or written, made by one person to another for a good and valuable consideration in the nature of a covenant, by which the promissor binds himself to do or forbear some act.'' And further, ''If you find from the evidence in this case that in the conversation which passed between Dunn, Burke and the defendant, the defendant merely expressed an intention to vote for John Vaughan for city attorney, or declared that he preferred Vaughan for city attorney, or that he would likely vote for him for city attorney, that would not be a promise under the law.''

Further facts stated in the opinion.

WOOD, J., (after stating the facts). (1) The appellant contends that the indictment does not charge, nor the evidence for the State prove, a public offense, for the reason that the indictment does not charge nor the evidence show that appellant promised to give to Barney Dunn and Jim Burke any office, position, employment, benefit or anything of value for the purpose of influencing or obtaining the political support, aid or vote of Barney Dunn and Jim Burke.

The statute does not require that the promise be made to the person to whom the office, position, employment, benefit or anything of value is to be given. It meets the requirement of the statute if it be alleged and proved that the promise was made to one person and the office, position, employment, benefit or anything of value was to be received either by the person to whom the promise is made or by some other person. In other words, it was sufficient to charge, as was done in the indictment under review, that appellant made the promise to Barney Dunn, Jim Burke, and others that he would use his influence in behalf of and vote for John H. Vaughan for city attorney for the purpose of influencing or obtaining the political support, aid or vote of Barney Dunn and Jim Burke, and the evidence was sufficient if it tended to prove these allegations.

The purpose of the law was to prohibit the debauchery of the electorate and the elected by preventing any candidate for office from obtaining votes by holding out to the voters the inducement that, if elected, he would give to one or more of them or to someone whom they might designate, an office, position, employment, benefit or anything of value. Such vote trading promises tend to the corruption of the voters on the one side and of the candidate on the other. For such promises to the voters would tend to commercialize the exalted and inalienable privilege of franchise, and such promises from the candidate would tend to depreciate in his own mind, as well as in the minds of the voters, the dignity and the im-

portance of the functions of the public office which is be-
ing sought by the one and bestowed by the other.

The indictment follows the language of the statute
and is sufficient. Without setting forth in detail and
commenting upon the instructions given and the prayers
for instructions refused, it suffices to say that the court
correctly interpreted the statute and correctly declared
the law in its rulings upon the instructions. Likewise,
without commenting in detail upon the evidence set forth
in the statement, it is enough to say that it sustained the
verdict.

(2) The testimony tends to prove that the appel-
lant, who was the candidate for mayor, promised or gave
his word of honor to certain individuals that if they
would vote and use their political influence for him, he,
in turn, if elected, would support and vote for John H.
Vaughan for city attorney.

The mayor and other commissioners constituted a
board of commissioners. It was the duty of the board of
commissioners by the majority vote, to appoint a city
attorney. See sections 4, 11, Act 13 of the Acts of 1913,
*supra.*

The position of city attorney under the statute was
an office of benefit and value to its incumbent. A promise,
therefore, on the part of the candidate for the office of
mayor, if elected, to vote for one for the office of city at-
torney, was a promise to confer upon that one an office,
position, and employment of benefit and value in so far
as the vote of the mayor could bring about such result.

(3) The effect of such a promise, if fulfilled, would
be to bestow a benefit upon the promisee in the sense of
the statute. The obvious purpose of the law was to cover
not only a promise to give an office, position, or employ-
ment, but to include every official favor or kindness that
might be within the power of the officer to confer. The
use of the word "benefit" indicates an intent on the part
of the Legislature to give the statute a broad scope, for
this word means: "An act of kindness; a favor con-
ferred; to gain advantage."—Webster. "Benefaction

or deed of kindness; favor bestowed;" synonyms: bless-
ing, boon, favor.—Funk & Wagnalls.

A considerable time after the jury had retired they
returned to the court room, when a member of the jury
stated he desired to hear section 6 read again. (Section
6 had never been read.) One of appellant's attorneys
said, "Possibly the juror wants instruction number six
read again," when a member of the jury said, "Yes, that
is it." Another member of the jury said, "No, section 6
of the Digest."

(4) The court then announced that he would ad-
journ until after supper and when court reconvened
would read all the instructions if the jury desired. When
court reconvened there was a discussion in the absence
of the jury, concerning what information it was that the
jury had requested, during which Mr. Covington, of ap-
pellant's counsel, was fined for cursing in the presence
of the court. Upon returning to the courtroom the court
asked the official stenographer to make a note of the ac-
tion taken, as the clerk was absent, at which time Mr.
Covington, in the presence of the jury stated that he ex-
cepted unless the court told the jury the facts about it.
The court then imposed another fine ($25.00) upon Mr.
Covington for contempt of court, for intimating that the
court had not stated the facts, to which action the de-
fendant excepted.

There was no error to the prejudice of appellant in
these proceedings. The record clearly shows that the
fine was imposed upon Mr. Covington, one of appellant's
counsel, but the judge in imposing the fine stated that it
was imposed because the attorney had cursed in the
presence of the court. And imposed the second fine be-
cause the attorney intimated that the court had not stated
the facts. There was nothing in these proceedings to
justify an inference that the court was attempting to hu-
miliate the attorney or to disparage his standing as an
attorney, or to belittle his learning or ability in the ef-
forts he had put forth in behalf of his client. The jurors,
as sensible men, must have concluded that these proceed-

ings were entirely collateral to any issue that was pending before them and that it only involved a matter wholly relating to the personal conduct of the attorney, which the presiding judge construed, and had a right to construe, as contemptuous.

Other questions are presented which we have examined, but do not deem them of sufficient importance to be discussed.

We find no reversible errors in the record and the judgment is therefore affirmed.