## Graham v. Alliston.

(Decided May 24, 1918.)

### Appeal from McCracken Circuit Court.

1. Elections—Corrupt Practice Act.—The Corrupt Practice Act (Acts 1916, Chapter 13) does not make it unlawful for a candidate to agree to appoint a particular person to a deputyship in consideration of the influence or support of such person in the election.

2. Elections—Corrupt Practice Act.—The Corrupt Practice Act (Acts 1916, Chapter 13) is not violated by a candidate, who was defeated in a primary election, refusing to support his successful opponent in the election, as he had promised to do pursuant to subsection 6 of section 1550 of the Kentucky Statutes.

3. Elections—Corrupt Practice Act.—The payment by a candidate in the prosecution of his canvass of any sum of money, however small, for any other purposes than those designated as legal by section 3 of the Corrupt Practice Act (Acts 1916, Chapter 13), will nullify an election if made by the successful candidate, or by others in his behalf and with his knowledge.

4. Costs—Compensation of Master Commissioners.—In the absence of an agreement, the compensation of a master commissioner is limited to $3.00 for each day he is actually engaged. Ky. Sts., sec. 1740.

HENDRICK & BURNS for appellant.

MOCQUOT & BERRY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant, Charles E. Graham, George Rouse and two others were candidates for the nomination for sheriff of McCracken county in the Democratic primary held in August, 1917. The votes were well distributed between the four candidates, with Graham, the successful candidate, leading Rouse, the candidate with the next highest vote, by 235 votes. At the general election held in November of that year the appellee, George L. Alliston, was the Republican candidate for sheriff; and, on the face of the returns he was elected by a majority of 194 votes over Graham. On November 19th, 1917, Graham filed his petition in the McCracken circuit court contesting Alliston's election upon several grounds, the principal grounds relied upon being (1) an alleged immoral and corrupt bargain between Rouse and Alliston under which Rouse supported Alliston in consideration of a deputyship which has subsequently been given him by Alliston; and (2) violations of the Corrupt Practice Act of 1916 by Alliston, his friends, and the chairman of the Republican campaign committee.

Graham testified that Alliston said George Rouse had supported him in his race and that he had agreed to make Rouse one of his deputies. Graham further testified that shortly after the primary Rouse told him he would support Graham and the entire Democratic ticket. The testimony upon this subject is somewhat ex-

tended, the effect of it upon one side being that Alliston made a bargain with Rouse to appoint him deputy sheriff for his support in the general election; the effect of it upon the other side being that Alliston made no such direct promise, but, at the suggestion of some of the other candidates, Alliston stated, or let it be known, that Rouse would be his Democratic deputy. There is no doubt that Rouse expected the deputyship which he obtained, since he worked actively in the support of Alliston, and no doubt contributed in a material degree to his election. Rouse was a prominent man in the county; had a large acquaintance; and was an active member in a very influential religious denomination whose members were friendly to him. But if Rouse supported Alliston under the promise of a deputyship that fact did not invalidate the election. Van Meter v. Burns, 176 Ky. 158.

And, the candidacy of Rouse in the Democratic primary, however binding it may have been upon him in morals and in good faith, did not preclude him from supporting Alliston in the general election. It is true Rouse made the oath required·by subsection 6 of section 1550 of the Kentucky Statutes, in which he swore that he would support and vote for the Democratic nominees at the coming general election; but his breach of that oath is not made an offense by the Corrupt Practice Act and could not affect the election from a legal standpoint. In Francis v. Sturgill, 163 Ky. 650, it was held that a candidate who had been defeated in a Democratic primary, could not, under the law, be made a Republican nominee at the general election so as to have his name placed under the Republican emblem on the official ballot, and that he could only get his name upon the ballot under a separate device of his own. But the case here is entirely different, since Rouse was not a candidate in the general election; he only voted and worked for Alliston, contrary to his oath. This controversy over the right to the office of sheriff is not between Graham and Rouse; it is between Graham and Alliston. However reprehensible, therefore, the action of Rouse may have been, it cannot be said that it violated the Corrupt Practice Act, or invalidated Alliston's election.

The Republican campaign committee consisted of the Republican candidates for the county offices, with L. B. Alexander, the Republican candidate for county

attorney, as its chairman. The issue was made as to whether there was a Republican campaign committee or chairman whose illegal actions could be charged against Alliston. We think it is clear, however, that there was such a committee and that Alexander was its recognized chairman throughout the campaign. Alexander so testified unequivocally, and in this he is supported by most of his fellow candidates.

It further appears that many colored voters were opposed to the election of Alliston upon the ground that when he was a member of the county board of education a short time previous to this campaign, he failed to supply certain negro schools with coal. This fact having been reported to the Republican campaign committee, its chairman caused R. E. Pearson, R. L. McCully, J. E. Rogers, J. W. Hall, V. S. Smith, J. O. Griffin and A. M. Samuels, colored preachers, to be paid five dollars each for their vote and support of Alliston; and a part of the bargain required them to "announce" their adherence to Alliston and the Republican ticket from their pulpits, which they did. Furthermore, ten dollars was paid to Centers and Black, colored voters, for their support.

These payments were in direct violation of the Corrupt Practice Act, and if done with the knowledge of Alliston they would constitute a ground of contest and nullify his election under section 11 of that act. Acts 1916, p. 60. The comparative insignificance of the amounts would not affect the case since section 3 of the act prohibits the use of any money, or other thing of value, either directly or indirectly, by a candidate, except for the legitimate purposes therein specified. But Alliston testified that he did not know of these illegal transactions, and that when he learned them he refused to repay any portion of the money so used to the chairman of the Republican campaign committee.

Alliston made three payments to the campaign fund, aggregating $55.00. Alexander, the chairman, paid out $663.02 as election expenses; and as Alliston was the only Republican candidate that was elected, it was agreed shortly after the election that the defeated Republican candidates should pay $100.00 of the unpaid balance, and that Alliston should pay the remainder, amounting to $303.12. It seems that Alliston at first agreed to pay the $303.12, but upon ascertaining that it

embraced the $35.00 paid to corrupt the negro preachers, and the $10.00 paid to Black and Centers, he excepted those sums from the amount and offered to pay the balance, which was declined by the chairman.

Several of the other candidates testified that Alliston attended the committee meeting at which it was determined to pay this money to the colored preachers, but Alliston contradicted them flatly in this respect. So upon this important issue we have proof upon either side. The chancellor presumably knew the witnesses, and was in a position which peculiarly qualified him to pass upon this issue of fact; and upon this issue he found in favor of Alliston and dismissed the petition. Under the circumstances we do not feel justified in reversing his judgment under the facts.

Objection is taken to the allowance made to the commissioner by the special judge of $75.00 for five days' services in counting the ballots. This was clearly erroneous. The statute is explicit and, in the absence of an agreement, it confines the commissioner's compensation to $3.00 for each day he is actively engaged. Ky. Sts., sec. 1740; Wathen v. England, 102 Ky. 537; Hely v. Hoertz, 119 Ky. 119. The costs will be taxed accordingly.

Judgment affirmed.