## Hardin v. Horn.

## Fletcher v. Johnson.

## Dempsey v. Cassady.

(Decided June 3, 1919.)

Appeals from Martin Circuit Court.

1.  Elections—Majority or Plurality Vote—Corrupt Practices Act.—A candidate, who receives neither a majority, nor a plurality of the legal votes cast, at an election, can not be declared elected to the office, although his successful opponent is ineligible, or has, by a violation of the Corrupt Practices Act, forfeited his right to the office.

2.  Elections—Primary Elections—Certificate of Nomination—Injunction.—The board of election commissioners has no judicial discretion in the matter of granting a certificate of nomination to the candidate for a nomination, at a primary election, who has received, upon the face of the returns, a majority or plurality of the legal votes cast, and may be compelled, by mandatory injunction, to do so, when the candidate shall have complied with the law with reference to filing statement of expenditures.

3.  Elections—Primary Elections—Void Nomination—Corrupt Practices Act.—A nomination at a primary election, is not void, because of violations of the Corrupt Practices Act by the candidate, in securing his nomination, ipso facto, but, only becomes void, when in a contest proceeding the nomination shall have been adjudged to be void.

4.  Elections—Ballots—When Cannot Be Counted.—When a name of a candidate is printed or written upon the ballot illegally, and contrary to law, and by one having no authority to do so, the votes cast for such candidate, can not be counted, in a computation of the legal votes, but, when the name is legally printed upon the ballot, the eligible votes cast for it, must have their effect.

5.  Elections—Ballots—Legality.—Where a nomination has not been set aside or held to be void, in the manner and at the time provided by law, and the name of the nominee has been printed upon the ballot, in the regular way, the name is not illegally upon the ballot, and eligible votes cast for such nominee, must be counted, although the nomination might have been set aside, if contested, in the way, and time provided by law.

6.  Elections—Corrupt Practices Act—Contest.—Violations of the Corrupt Practices Act, in securing a nomination are not grounds for contesting the election of the nominee, at the final election, where his name has been regularly placed upon the ballot, and

his nomination has not been successfully impeached, by a contest for that purpose.

C. B. WHEELER and JAMES M. FINLEY for appellants.

CLYDE MILLER and A. J. KIRK for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

These actions were prepared, heard and determined together in the trial court, and from the judgment rendered in each, an appeal, has been taken. The style of each action embraces two suits between the same parties in both of which the plaintiff, below, relied upon the same cause of action, made the same averments, and the defense consisted of the same denials, and the same grounds of counter contest.

The only difference in the suits is, that one of them was filed on the 17th day of November, 1917, and the other between the same parties, on the 11th day of December, 1917. The court, in each case, consolidated the two actions, between the same parties, and tried them together, although the latter action was filed after the time allowed by law for making a contest of an election. The appellants were plaintiffs, in the actions below, and the appellees were the defendants. The history of the litigation is, that, at the regular primary election held in 1917, in Martin county, Hardin and Horn were candidates for the nomination of the Republican party for sheriff; Fletcher and Johnson were candidates for the nomination of the same party for superintendent of schools; and Dempsey and Cassady were candidates for the nomination of the same party for clerk of the county court. The election resulted in Horn, Johnson and Cassady, receiving a majority of the votes cast at the election, for the nominations for which they were candidates, respectively.

Each of the appellants, Hardin, Fletcher and Dempsey, instituted two suits, exactly alike, in causes of action, against his late opponent, contesting his right to the nomination, upon the ground, that his late opponent had violated the provisions of the Corrupt Practices Act, in obtaining his nomination. One of the suits, each of the appellees instituted, on the ...... day of August, and the others were instituted on September 1st. The circuit court dismissed each of the suits brought on the ..... day

of August, presumably, upon the mistaken ground, that they were prematurely brought. Each of the appellees filed an answer, in the action against him, which was instituted on the first day of September. The issues were made up in these actions and a large volume of proof taken, but, before their submission and trial, were dismissed, upon the motions of the plaintiffs, respectively, without prejudice to a future action. In due time, after the primary election, a certificate of nomination, was granted to each of the appellees, for the office for which he had been nominated at the primary election. These certificates being filed with the clerk of the county court, their names were regularly printed upon the ballots, which were used at the regular election, in November, 1917, as the candidates of the Republican party, for the offices of sheriff, superintendent of schools, and clerk of the county court, respectively. The names of the appellants were, also, printed upon the ballots, as independent candidates, for the same offices, respectively, for the nominations to which, they had been defeated in the primary election. The regular November election resulted, in each of the appellees, receiving a majority of the votes cast for his election to the office, for which he was a candidate. Thereafter, each of the appellants instituted two suits against his successful opponent, at the time, heretofore stated, contesting the election of his opponent to the office to which he had been elected. After the preparation of these actions, and on final submission, the court adjudged, that appellants had failed to manifest any right to relief, and dismissed their actions, and from the judgments, the present appeals were prosecuted. The grounds of contest relied upon by each of the appellants, were:

(1) His opponent, and his supporters, with his knowledge, expended more than $1,000.00 in aid of his election, much of which was used to corrupt and influence voters to vote for his opponent, and his opponent intentionally and corruptly omitted from the statement of his expenditures, filed previous to the election, and the one filed thereafter, sums of money spent by him and his friends, and included in the statements, sums of money, which he corruptly and falsely reported, as being expended for one purpose, when they were expended for another, and for which reasons his election was void.

(2)   His opponent was guilty of the same wrongful acts, in the expenditure of money, preceding and at the primary election, and in failing, corruptly and intentionally, to include his expenditures in the statements, filed by him, preceding and after the primary election, and for such reasons, his nomination was void.

(3)   His opponent's nomination being void, his name was illegally upon the ballot, and the votes, received by him, were void, and should not be counted, and appellant having complied with all the requirements of the Corrupt Practices Act, and being the only candidate for the office, who had received any legal votes, was entitled to be adjudged to be declared elected to the office.   The existence of the above stated grounds were denied by each of the appellees, in the suits against them respectively, and they, also, preferred various grounds of counter contest against their adversaries, among which, they alleged, that each of the appellants had committed the same violations of the Corrupt Practices Act, which the appellants charged against them.

(a)   The contention, that appellants are entitled to be adjudged to have right to the offices in the event, it should appear, that the appellees have forfeited their rights to same by violations of the Corrupt Practices Act, will be first considered.

Section 11, of chapter 13, of Session Acts, 1916, usually called the Corrupt Practices Act, provides, as follows:

"In any contest over the nomination or election of any officer mentioned in this act, it may be alleged in the pleadings, that the provisions of this act have been violated by the candidates or by others in his behalf with his knowledge, and if it so appears upon the trial of said contest, then said nomination or election shall be declared void, and it is hereby provided, that the candidate who has received the next highest number of votes and who has not violated the provisions of this act shall be declared nominated or elected, unless it, also, appears, that one of the parties to the contest received a plurality of the votes cast and did not violate the provisions of this act."

Until the enactment of the above statute, it had been held, continuously, by this court, that although the candidate, who received a majority or plurality of the legal votes cast at an election for an office, should be ineligible

to hold the office, or should be guilty of some act, which would work a forfeiture of the right to qualify or hold the office, an opposing candidate, who received neither a majority nor a plurality of the legal votes cast, was not elected to the office nor entitled to hold it, although he was eligible, and had not forfeited his right to hold such office. Howes v. Perry, 92 Ky. 260; Grinstead v. Scott, 82 Ky. 88; Stevens v. Wyatt, 16 B. M 542. In the late case of McKinney v. Barker, 180 Ky. 256, the portion of the above statute which provides for declaring one elected to an office who has received neither a majority nor a plurality of the legal votes cast was held to be in contravention of the Constitution and void, and the former doctrine adhered to, that one can not be entitled to an office, by reason of an election, at which he received neither a majority nor plurality of the legal votes cast, although the candidate who received a majority or plurality of the legal votes, was ineligible or had forfeited his right to hold the office, by violations of the Corrupt Practices Act. When an election for an office results in the selection, by a majority or plurality of the legal voters, of an individual, who is ineligible or who, by failure to comply with the law regulating elections, had forfeited his right to qualify, and hold the office, the result is a vacancy in the office. It is insisted, that the votes cast for appellees, in the November election, at which they were selected for the offices, by receiving a majority of the votes cast, were not legal votes, because of the violations of the Corrupt Practices Act, by the appellees, before, and at the primary election, and for that reason, they had no right to have their names printed upon the ballots, to be used, at the November election, and hence, that the votes cast for them should be ignored and disregarded, in a computation of the legal votes, cast at the November election. In support of this contention, the cases of Edwards v. Loy, 113 Ky. 746, and others are relied upon, but, we do not think, that they have any bearing upon the question in hand. The law in force, at the time of Edwards v. Loy, *supra*, provided, that if a voter desired to vote for one, whose name was not upon the ballot, he should write it thereon, at the proper place, and then make a cross-mark, in the square, opposite the name. Loy's name was not upon the official ballot, and certain clerks of the election, without being requested to do so, by the voters, wrote Loy's name under the de-

vice of the candidate of the Democratic party, as though he was a nominee of that party, and several hundred voters, stamped these ballots under the device at the head of the column, and it was held, that the votes should not be counted for Loy, nor affect the result of the election, because the voters had failed to comply with the requirements of the law, so as to legally vote for a candidate under such circumstances, as the clerk was without authority to write Loy's name on the ballot, and the voter to vote for a candidate, not upon the ballot, must write his name thereon, or request that it be written thereon, and stamp the square at the end of the name. A distinction is drawn between the failure of a voter to comply with the requirements of the law, in preparing his ballot, voting upon, and depositing it, and the derelictions, faults or mistakes of the officers in charge of the election. In the first instance, the voter must suffer the penalty of losing his vote, in other words, it is not a legal vote, but, in the latter instance, he does not.

Bates v. Crumbaugh, 114 Ky. 454. If the name of a candidate is illegally printed upon the ballot, is put upon it by some one, having no authority to do so, and contrary to law, it is held that votes can not be counted as having been cast for him. King v. McMahan, 179 Ky. 536; Parrish v. Powers, 127 Ky. 169. Such, however, is not the situation here. Under the provisions of the statutes, which govern primary elections, and control the manner of making nominations, the board of election commissioners must give a certificate of nomination to the candidate, at the primary election, who received a majority or a plurality of the votes cast, as appears from a tabulation of the returns when the candidates shall have filed a post-election statement of his expenditures as provided by section 4, chapter 13, Session Acts, 1916, and if the board of election commissioners should refuse to grant such certificate, the members of it may be required, by mandatory injunction, to assemble and issue the certificate. The members of the board nor the board itself, has any judicial discretion in the matter. Ward v. Howard, 177 Ky. 38; Lay v. Rose, 177 Ky. 303; Hayes v. Combs, 177 Ky. 355; Sparkman v. Saylor, 180 Ky. 263. When the certificate shall have been seasonably filed with the clerk of the county court, or other officer designated by statute according to the nature of the of-

fice, it, not only is his duty, but he may, also, be required, by mandatory injunction, to cause the name of the nominee, as it appears from the certificate, to be printed, for the election, at which such office is to be filled by election. Neither the election commissioners, nor the clerk can refuse to perform the above prescribed duties, except in obedience to the judgment of the court when an opposing candidate, to the one shown to have been nominated upon the face of the returns, shall have instituted a contest, and succeeded in having the apparent result, changed, or the certificate, if issued, declared invalid, or the nomination adjudged to be void, While the Corrupt Practices Act provides, that in a contest over a nomination, if it appears, that the successful candidate has violated the provisions of the act, the court shall adjudge the nomination to be void, it does not declare the nomination to be void, on account of violations of the act, which may have been committed, *ipso facto*, but, a violation of the act, appearing in a contest proceeding, the court shall declare the nomination to be void. Hence, if the act has been violated in securing a nomination, the nomination does not become void, until it has been so adjudged in a contest proceeding, and if it is never impeached by such a proceeding, it is *prima facie* valid, and the name of the nominee is legally printed upon the ballot. Hence, it follows, that the name of one, who holds a certificate of nomination, which has not been adjudged invalid, is not illegally printed upon the ballot when it is done by the officers of the law, whose duty it is, according to provisions of the statute, to do so, and who have no discretion in the matter, and may be compelled, by injunction, to perform the duties, if they shall refuse.

In McKinney v. Barker, *supra*, it was held, that the successful candidate, by his failure to file a pre-election statement of his expenditures, forfeited his right to hold the office, when elected, and his election was void, because of that fact. The votes, which were cast for him however, were held to be legal votes, as the voters, themselves, being eligible, to vote, had not neglected any duty, which was incumbent upon them in any manner of casting their votes. In the instant cases, the eligibility of the voters for the appellees, is not questioned nor is it contended, that any of them voted in a manner contrary to that. provided by law, for the exercise of their rights of suffrage.

Since the appellants are not, in any event, entitled to the offices, in controversy, it is unnecessary to consider the various grounds of counter contest preferred against them by the appellees, nor their alleged compliance, or failure to comply with the provisions of the Corrupt Practices Act. The appellants, are, however, entitled to contest the election of the appellees, although they would not be entitled to the offices, if the elections should be adjudged to be void. Grinstead v. Scott, 82 Ky. 88; McKinney v. Barker, 180 Ky. 526.

(b) Whether a violation of, or a failure to comply with the requirements of the Corrupt Practices Act by a candidate for a nomination at a primary election, is available as a ground of contest of his election at the final election, when he had received a certificate of nomination, and filed same with the officer, provided by law, for that purpose, and his name printed upon the ballots to be used at the election in the regular way, and when his nomination, nor the certificate thereof, was ever set aside, nor held invalid previous to the election, presents a question, not heretofore decided. To a decision of this question, it is necessary to consider the terms of the statute, and to ascertain the intentions of the legislature upon that subject, as previous to the enactment of the Corrupt Practices Act, there was no warrant for adjudging an election to be void, on account of a failure to file statements of expenditures, or for other requirements of the act, nor on account of the illegal use of money in the election, unless there was such bribery in the conduct of the election, that neither party could be adjudged to have been fairly elected. Section 1596a, subsection 12, Ky. Stats. It will be observed, that the statute, section 4, chapter 13, Session Acts, 1916, provides, that "in any contest" for the nomination or election of any officer mentioned in the act, "if it appears on the trial of said contest" that a candidate has violated the provisions of the Corrupt Practices Act, or any one has done so, in behalf of the candidate, and with his knowledge, "then said nomination or election, shall be declared void." As a matter of course the act does not contemplate, that in a contest of a nomination, a violation of the provisions of the act in the final election should render the nomination void, because the things, which might occur in the final election, have not then occurred; and it will be observed,

that the statute does not, in express terms, nor by neces-
sary implication provide, that a violation, by the candi-
date, of the provisions of the act, in securing his nomi-
nation, shall render his election to the office void where
his name has been legally printed upon the ballot. The
act, by all of its sections, distinguishes the sums of
money which a candidate, for any nomination, may ex-
pend in securing his nomination, from the sums, which
he may lawfully expend in promoting his election there-
after to the office for which he was nominated.

The acts, relating to primary elections do not provide
for any one other than a candidate for a nomination
making a contest over a nomination. Section 1550, sub-
sections 27, 28, Ky. Stats. In contests over nominations
the statutes require the contestee to answer in not less
than three nor more than ten days, the grounds of con-
test contained in the notice; the judge of the circuit court
must forthwith proceed, and dispose of the contest; the
parties may have five days each, for the introduction, or
taking of their evidence in chief, and one day each, there-
after, to offer evidence in rebuttal; and these periods
are fixed as the limit of the time wherein proof can be
taken, unless the ends of justice require an extension of
time, and is granted by the court. The evident intention
of the legislature, in accordance with the public policy
of the state upon that subject, was to provide, by law, for
a speedy determination and adjustment of controversies
and disturbances over nominations, as well as contests of
final elections, and there is not much doubt, of the wis-
dom of the policy which contemplates, that an end of
such controversy, should be speedily made. It was held
in Sparkman v. Saylor, 180 Ky. 263, that a defeated can-
didate at an election could not question the validity of an
election on account of any violation of the Corrupt Prac-
tices Act, by the successful candidate, except by way of a
contest filed in the time and manner prescribed by law.
It would follow, from analogy, that a defeated candidate
for nomination, should not be permitted to question the
validity of the nomination on account of violations of, or
failure to comply with the Corrupt Practices Act, by his
opponent, except by a contest, filed in the time and in the
manner, provided by law. The statute provides the nec-
essary means to have redress for any grievances, arising
from an infraction of the law, occurring in primary elec-
tions, and prescribes the time and manner in which the

validity of a nomination may be impeached, and if advantage is not taken of the time and manner, prescribed by law, for the impeachment of the nomination, it would follow, that there is no machinery of the law, by which it can be done, thereafter. This is in accordance with the law, which applies to a redress of a grievance upon every other subject, and there seems to be no reason why it should not be, also, applicable to relief sought on account of violations of the Corrupt Practices Act, and failure to comply with such act, as may occur at primary elections. Hence, it is concluded, that the statutes, *supra,* providing, for declaring a nomination to be void on account of violations of the Corrupt Practices Act, means violations of that act in securing the nomination; and the authority it confers to adjudge an election to be void, on account of the violations of the Corrupt Practices Act, means violation of the act in securing the election, and not of those infractions of the law, committed in securing the nomination; as it will be observed, that the statute limits the power of the court in adjudging a nomination or election to be void, to such violations of the Corrupt Practices Act, as appear in the contest, and these violations, that appear in a contest of the election does not include those which may have occurred in securing the nomination. Having arrived at this conclusion it will be unnecessary to consider the large volume of evidence taken by the parties in the contest of the nomination, in the suits, filed on September 1st, and which has since, been filed as evidence in these actions, and this conclusion arises aside from the fact, that the suits impeaching the nominations, filed on September 1st were instituted long after the time had expired within which suits contesting nominations could be maintained. Ward v. Howard, 177 Ky. 38.

(c) The allegations of the petitions, in setting forth the grounds of contest, are very general and indefinite, and although the contestees made motions to require the contestants to make a more specific declaration of their grounds of contest, the motions were never passed upon, and the contestees did not seek the judgment of the court, upon the motions, and hence, waived the grounds of the motions. The evidence touching violations of the Corrupt Practices Act, in securing the nominations at and before and following the primary election having been eliminated, there is only left for consideration, the evi-

dence having relation to violations and failure to comply with the Corrupt Practices Act, touching the final election.

This evidence entirely fails to prove any violation of the Corrupt Practices Act, by either of the contestees, or by any person, in behalf of either of the contestees, with the knowledge of such contestee, in aid of their elections, at the final elections in November, 1917, or a failure of either of the contestees to file proper pre-election and post-election statements of expenditures. Copies of neither the pre-election nor post-election statements, filed by contestees, are in the record, and there is no evidence showing, that either of them made any expenditures, not shown in the statements, or that expenditures were made and reported in the statements as having been made for one purpose, which were made for another; neither does it appear from any source what the expenditures were as shown by the statements, except the gross sum shown by the post-election statements, the largest of which was that of Johnson and which was less than $130.00. The deposition of contestee, Horn, was taken by contestants, and exhibits a strong case of evasiveness and want of candor, and a memory of events extremely faulty. The deposition of an ex-sheriff, who was a partisan of the contestees, was, also, taken by contestants, and he details a remarkable circumstance of some one, whom he does not remember, handing to him a package of money, upon the street, or else he found it lying upon his office table, marked with the name of a polling place, thereon, and that he took and used the money, promoting the election of the contestees, giving it to any one desiring it, but, he did not count the money, and does not remember to whom he gave it, and has no idea how much money there was, or from what source it came to him, and has no memory of any person, who was present, when he received it, but does remember that neither of the contestees had any connection with it, and yet he unhesitatingly spent the money, the ownership of which he did not know, for contestees. The lack of memory exhibited by this witness, as to persons, times and places, is strangely remarkable in view of the fact, that apparently his friends permit him to go at large, unaccompanied, and doubtless dependent upon his own memory, as to where his home is, when he desires to return to it, as well as the proper time at which he should take his victuals.

Such evasiveness and want of candor necessarily create a strong suspicion that the contestees, or one of them, furnished the money and that it was used in his behalf, or at least with his knowledge, for corrupt purposes, but, in the absence of some affirmative evidence, connecting the contestees with a knowledge of it, it is insufficient to bring home to them any violation of the law and the burden, of proving the grounds of contest, rests upon the appellants. The use of money, either directly or indirectly by a candidate, in the promotion of his election, except for legitimate purposes, would forfeit his election under the Corrupt Practices Act. The use of it, however, to have that effect, would have to be by the candidate, or in his behalf and with his knowledge. Graham v. Alliston, 180 Ky. 687; VanMeter v. Burns, 176 Ky. 152.

The admission by Horn, that previous to the election, he had promised a deputyship to a voter, is not a ground for adjudging his election void, under the Corrupt Practices Act. Graham v. Alliston, *supra;* VanMeter v. Burns, *supra.*

The judgment in each of the cases is therefore affirmed.