## Brandenberg v. Hurst.

May 12, 1942.

Leebern Allen and D. C. Howell for appellant.

Shumate & Shumate for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

As is disclosed in Brandenberg v. Hurst, 289 Ky.
155, 158 S. W. (2d) 420, on the face of the returns Robert Brandenberg was elected sheriff of Lee County by 5
votes at the November 1941 election. Z. T. Hurst, his

opponent, filed a proceeding for a recount and a contest. Section 1596a-12, Statutes. On the recount branch of the case, we reversed the judgment and held that Brandenberg was shown to have had a majority of 2 votes. The trial of the contest proceeded with the result that the same special judge found that by eliminating illegal votes Hurst was elected by a majority of 58 and that he had not violated the Corrupt Practice Act, Kentucky Statutes, Section 1565b-1 et seq. as Brandenberg had charged in a counter-contest. Brandenberg again appeals.

1. Hurst alleged in his petition that he was a citizen, resident and voter of Beattyville Precinct No. 2 of Lee County, Kentucky, and had been such for over five years; further, that he was affiliated with the Republican Party and was the duly qualified candidate of that party for the office of sheriff, having had his name properly placed upon the ballot. Brandenberg denied the allegation of citizenship and affirmatively alleged that "many years ago, about the year 1915," the contestant had enlisted as a soldier in the army of the Dominion of Canada, had thereby forfeited his American citizenship and had become a subject of the King of England. It was further pleaded that Hurst had never been naturalized thereafter and was and is not a citizen or elector of Lee County, Kentucky, and was and is not entitled to hold office in the Commonwealth. This was relied upon as a bar to Hurst's right to maintain the contest. The court sustained a demurrer to this plea. But there remained the traversed allegation of citizenship, and Hurst did not offer any proof on that issue. Brandenberg maintains that it was error not to allow his plea in bar and not to decide the case in his favor against Hurst because of his failure to prove his citizenship.

Under the law prevailing in 1915, a citizen of the United States forfeited his citizenship by taking an oath of allegiance to a foreign State. In becoming a soldier in the army of the Dominion of Canada, it was necessary that one swear allegiance to the King of Great Britain. Section 2, Act of March 2, 1907, 34 Stat. 1229; 8 U. S. C. A., Section 17. See Camardo v. Tillinghast, 1 Cir., 29 F. (2d) 527; United States ex rel. Rojak v. Marshall, D. C., 34 F. (2d) 219. After our declaration of war with Germany on April 6, 1917, because one could not expatriate himself while his country was at war, a man might

have joined the army of another nation without losing his citizenship. By an Act of Congress of October 5, 1917, 40 Stat. 340, citizens of the United States who had entered the military or naval service of a country which was at war with our then enemies had the right to resume and acquire the character and privileges of citizenship of this country under certain conditions. On May 9, 1918, Congress passed an act amending and repealing certain portions of the naturalization laws and provided in Subsection 12 of Section 4 thereof (40 Stat. 545, 8 U. S. C. A., Section 18) that:

"Any person who, while a citizen of the United States and during the World War in Europe, entered the military or naval service of any country at war with a country against whom the United States declared war, who shall be deemed to have lost his citizenship by reason of any oath or obligation taken by him for the purpose of entering such service, may resume his citizenship by taking the oath of allegiance to the United States prescribed by the naturalization law and regulations, and such oath may be taken before any court of the United States or of any State authorized by law to naturalize aliens or before any consul of the United States, and certified copies thereof shall be sent by such court or consul to the Department of State and the Immigration and Naturalization Service."

It is further provided that upon satisfying the Commissioner of Naturalization that he had thus proceeded an individual may obtain a certificate of repatriation which will have the same effect as a certificate issued by a court having naturalization jurisdiction. See In re Grant, D. C., 289 F. 814; McCampbell v. McCampbell, D. C., 13 F. Supp. 847.

The appellant takes notice of our interpretation of Section 1596a-12, Kentucky Statutes, holding that eligibility for office cannot be challenged in a contest of an election, the authority to test legal qualification for holding office being lodged elsewhere. Hart v. Rose, 255 Ky. 576, 75 S. W. (2d) 43. Although questioning the soundness of the reasoning and the conclusion of that ruling, the appellant nevertheless recognizes its, force. But he argues that the question here is not one of eligibility to hold the office but is the right to maintain the action. He submits as by analogy that a non-resident of Kentucky

whose name had been written in on a few ballots would have no right to maintain a contest of the election of another for he must have had the necessary qualification of a voter and elector of the state. It seems to us a distinction without a difference is drawn. Indeed, it is well established that an apparent loser, who is himself incapable of taking the office, has the right to challenge the election of his opponent. McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581; Brewer v. Compton, 276 Ky. 53, 122 S. W. (2d) 1024. And a voter and citizen who was not a candidate cannot maintain an election contest under the statute. Davis v. Stahl, 287 Ky. 629, 154 S. W. (2d) 736. The analogy of a non-resident contesting an election is not appropriate. One of the bases of the ruling denying the right to question eligibility of a candidate for an office is that it is to be presumed that one whose name was placed upon the ballot of a general election had the right to have it there because of the presumption of the due performance of official duty by the officers charged with the responsibility of preparing the ballots. The contestant's allegation of citizenship and qualification for the office was superfluous and unnecessary. It was sufficient for him to allege that he was the candidate of the Republican Party for sheriff of Lee County and that his name had been placed as such candidate on the ballot. He did so state in his petition and the answer did not deny it. Parrish v. Powers, 127 Ky. 164, 105 S. W. 391; Lippold v. Hagner, 226 Ky. 103, 10 S. W. (2d) 619.

2. The petition specifically referred to the general election held in November, 1941, as that involved in the contest. But in several paragraphs relating to different precincts it was stated that certain named persons had voted illegally for the defendant at the "primary election." The court after trial struck votes of some of those persons from Brandenberg's total. When attention had been called to this very apparent inadvertent reference to a primary election, Hurst was permitted to amend his petition to correct the allegations, although 30 days from the election had expired. The appellant argues that this was error. Passing over the supertechnicality of error in the pleading, we think the court properly allowed the amendment to be filed. Unlike Section 1550-28 of the Statutes governing the contest of a primary election, Section 1596a-12 of the Statutes governing the contest of a regular election only prohibits

the setting up of a new ground of contest. It has, therefore, been consistently held that a party proceeding under that section may amend his pleading at any time to correct erroneous allegations or cure defects in pleading so long as he does not set up a new ground of contest. Harald v. Turner, 237 Ky. 827, 36 S. W. (2d) 623; Campbell v. Combs, 273 Ky. 404, 116 S. W. (2d) 955.

3. The appellant questions the ruling of the trial court eliminating the votes of 15 persons from his total and in refusing to strike 7 votes from Hurst's. It is not necessary to consider these for if appellant's contention should be sustained in its entirety he would still be loser by 36 votes.

4. Another point argued for a reversal of the judgment is that the court erred in refusing to let the appellant amend his counter-contest after the expiration of 30 days from the election and allege that he had not violated the Corrupt Practice Act. In Kelley v. Barlow, 287 Ky. 680, 155 S. W. (2d) 10, a ruling of the trial court that the contestant could not file an amended petition after the expiration of the time for instituting the contest proceeding and allege his innocence in respect to that act, because it came within the class of an additional ground of contest, was affirmed by an equally divided court. It is not necessary in this case to pass upon that question of law for the reason, among others, that we concur in the decision of the trial court that the pleader's opponent, who was shown to have received a majority of the legal votes, was not proven guilty of violating the Corrupt Practice Act and is, therefore, entitled to the office. The question of whether the contestee did so or not thus passes out of the case.

5. The special judge delivered an exhaustive opinion concerning the law and the evidence introduced on the issue of Hurst's guilt of violating the Corrupt Practice Act. It is, therefore, sufficient merely to state briefly and generally what that evidence was. There was evidence of some vote buying of which Hurst was apparently the beneficiary; but there is nothing to indicate that he consented to or had knowledge of it. Mrs. Christine Bradley, a defeated candidate for County Court Clerk, testified that at an early meeting of certain candidates of the Republican Party, at which she was present, it was estimated by Hurst that there were 700 vote sellers in the county and that it was agreed by the group to

raise a fund with which to buy them. It was proposed by another that each candidate be assessed $500 for that purpose. The witness admitted her prejudice, which was apparently due to disappointment in the election and the fact that she believed that others in the group had gone back on her. She did not put up any money and a number of those present at the meeting denied there was any agreement or conspiracy, such as she declared, and it was shown without contradiction that a few of them put up only $100 each. Hurst put up $105, the difference being by mistake. All this money was proven to have been spent for transporting voters. Had there been proof of wholesale buying of votes or other voluminous corruption from which it could be inferred that there was a conspiracy and it was carried out, we would have a different case. But that was not shown here. The trial court called attention to the fact, as reflected in the evidence, that Hurst had obtained his nomination in a close election and by a contest, the final decision being that he was chosen by 25 votes. Kincaid v. Hurst, 287 Ky. 824, 155 S. W. (2d) 225. Hurst, therefore, went into this election with much experience and little money. We think the court properly rejected as unsubstantiated one or two instances where it was claimed Hurst had personally bought votes.

Wherefore, the judgment is affirmed.