## Altshuler Election

*I. Ostroff*, for petitioners.

*W. T. Connor*, for county board of elections.

*M. H. Morgan*, de bene esse, for Benjamin S. Altshuler.

OLIVER, P. J., and CRUMLISH, J., November 29, 1948.—The petition, filed by duly qualified electors of the third legislative district, comprising the third, fourth and fifth wards in the City and County of Philadelphia, alleges that Benjamin S. Altshuler was illegally returned as elected a representative in the General Assembly from that district, in that he had

not been an inhabitant thereof for one year next before the election on November 2, 1948, as required by the Constitution, article II, sec. 5, and that, therefore, all votes cast for him were illegal and his purported election was likewise illegal. The court directed that the petition be filed, set a date for a hearing, required a bond of $500 to be entered by petitioners, and ordered the county board of elections not to certify to the Secretary of the Commonwealth any return as to Benjamin S. Altshuler until disposition of this contest.

Respondent Altshuler filed a motion to quash the petition and all proceedings herein and to vacate the order of the court. The county board of elections filed a motion to set aside the restraining order. The matter is before us on those motions.

After careful consideration we have reached the conclusion that this court does not have jurisdiction to entertain the petition.

Article II, sec. 9 of the Constitution provides: "Each house . . . shall judge of the election and qualifications of its members." Article VIII, sec. 17, provides:

"The trial and determination of contested elections of . . . members of the General Assembly, . . . shall be by the courts of law, or by one or more of the law judges thereof; the General Assembly shall, by general law, designate the courts and judges by whom the several classes of election contests shall be tried, and regulate the manner of trial and all matters incident thereto. . . ."

"A constitutional provision that each house of the legislature shall be the judge of the election and qualifications of its own members is an exclusive grant of power and constitutes each house the sole and ultimate tribunal to pass upon the qualifications of its own members, which power cannot be granted away or transferred to any other tribunal or officer . . .": 18 Am. Jur., §288.

The sections of the Constitution above quoted were considered and found to be consistent in In re Contested Election of Hugh McNeill as Senator, 111 Pa. 235, (1885), where the court said (p. 240-1):

"A careful reading of this sec. 17 shows that its purpose is not to take from each house the power to judge of the election and qualifications of its members, given by sec. 9 cited. Its purpose is merely to provide a method for procuring and presenting to the respective house the evidence and information necessary for an intelligent decision, and to secure early action. . . .

"This Act (of May 19, 1874) does not authorize the Common Pleas to enter any judgment or make any decree declaring which claimant is entitled to the office, *but merely that it shall decide which candidate received the greatest number of legal votes* and is entitled to the certificate of election. This language appears to have been purposely used so as not to impinge on the power of the respective house to ultimately judge and determine. The same Act provides for the trial before the courts of contested elections of divers other officers, and declares that the person who by the decision of the court shall appear to have received the largest number of votes 'shall be entitled to the office,' and be commissioned accordingly. In contested elections of senators and members the Act does not give any such power to the court, nor any such effect to its decision." (Italics supplied.)

Sections 1741, 1742, 1744 and 1745 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §§3401, 3402, 3404 and 3405, are, in every essential pertinent to the issue before us, the same as sections 11, 12, 13 and 14 of the Act of May 19, 1874, P. L. 211, 212, which were before the court in the McNeill case.

We are being called upon, however, not to determine "merely . . . which candidate received the greatest

number of legal votes," but to pass upon the qualifications of an apparently successful candidate.

At the oral argument counsel for petitioners relied strongly upon section 1744 of the Act of 1937, and inadvertently stated that it was a new section and gave this court jurisdiction as to the qualifications of Altshuler, because it contains the words italicized in the following excerpt:

"The court of common pleas to which a petition shall be presented as aforesaid, *contesting the right* of a candidate for senator or representative in the General Assembly . . . *to the seat for which he may have been returned as elected* . . . shall have authority. . . ." (Italics supplied.)

But those exact words were included in section 13 of the Act of 1874, considered in the McNeill case. Counsel may have been confused by the fact that section 1743 of the Act of 1937 is new; but that section merely states who shall be parties to the contest and has no bearing on the issue before us.

Furthermore, the Act of 1937 makes clear by the use of headings what each section is intended to cover. Section 1741 is entitled *"Jurisdiction to try"*. It gives the jurisdiction but relates only to "contested nominations and elections". Section 1742 is entitled *"Method of contest; petition; notice"*. It deals only with petitions "complaining of an illegal primary or election or false return." Section 1743 is entitled *"Complainants and candidate returned shall be parties"*. It relates only to "the trial of contested nominations or elections". Section 1744 is entitled *"Powers and duties of the court"*. It sets forth the powers of the court "to which a petition shall be presented *as aforesaid"*. The words "as aforesaid" obviously mean as provided for in sections 1741, 1742 and 1743, and were not intended, as petitioners contend, to confer upon the court additional jurisdiction which would enable it to try not

only "contested elections" but, more broadly, "the right of a candidate . . . to the seat for which he may have been returned as elected."

This interpretation is in accordance with the decision in the McNeill case, and is also in accord with the decision in In re Election in the Nineteenth Ward, 1 W. N. C. 114, (1874) in which counsel raised the question whether the court of common pleas under the Act of May 19, 1874, has jurisdiction "to judge of the question of qualification" in an election of a member of the legislature. Article II, sec. 9, and Article VIII, sec. 17, of the Constitution were cited.

The court (Allison, P. J., and Ludlow, J.) dismissed the petition, saying it was a case of qualification of a member of the General Assembly, and the Court had no jurisdiction to inquire into it.

In Auchenbach v. Seibert, 120 Pa. 159 (1888), a petition was filed contesting the election of a candidate for the office of member of the Council of the City of Reading on the ground that he did not possess the qualifications for holding the office with respect to residence, as required by the statute. The lower court sustained the petition, after holding that it possessed jurisdiction in the proceeding to determine the qualifications of the elected candidate. The Supreme Court, however, in reversing the lower court, said (p. 170):

"It is very clear that the court of quarter sessions acted ultra vires in entering judgment of ouster against the respondent in this case. It had no jurisdiction to pronounce upon the qualification of Daniel Auchenbach as a councilman. The act of assembly vests that power not in the court, but in that branch of the municipal council to which the member may be elected. It is only in contested election cases that the court has jurisdiction, and as this jurisdiction is not one of common law it cannot be extended by implica-

tion beyond the prescriptions of the act in which it originates. . . ."

29 C. J. S. 361, §249 declares:

"The question of the successful candidate's eligibility to hold office is a proper subject of inquiry by quo warranto, and cannot as a rule be raised in a statutory contest of election."

Decisions to the same effect will be found in other jurisdictions. In Wagler v. Stoecker, 393 Ill. 560, 561, 66 N. E. (2d) 408, 409 (1946) the Supreme Court of Illinois said:

"Proceedings to contest an election are purely statutory. Repeated decisions have firmly established the rule that the purpose of an election contest is to ascertain how many votes were cast for or against a candidate, or for or against a measure, and thereby ascertain and render effective the will of the people. The only power given by statute to the court in the present election contest is to determine which of the parties has been elected. The eligibility of the person elected to hold the office cannot be determined in such proceeding. In short, the remedy to determine the question whether a person elected to office possesses the requisite qualification for eligibility is by an information in the nature of quo warranto."

In Brandenberg v. Hurst, 290 Ky. 592, 596, 162 S. W. (2d) 223, 225 (1942), the court held:

"One of the bases of the ruling denying the right to question eligibility of a candidate for an office (in an election contest proceeding) is that it is to be presumed that one whose name was placed upon the ballot of a general election had the right to have it there because of the presumption of the due performance of official duty by the officers charged with the responsibility of preparing the ballots."

Our jurisdiction under sections 1741 to 1745 inclusive of the Act of June 3, 1937, is limited to "con-

tested election cases". Such cases involve the question of whether or not the will of the qualified electors was correctly shown by the returns made. To put it briefly, was the election legally conducted from beginning to end? By no stretch of the language of the Election Code can we take jurisdiction where the question of the qualification of the candidate is involved, at least at this stage. The question of the qualification of a candidate elected a member of the State legislature is, of course, within the jurisdiction of the legislative body itself; the question of the qualification of all other candidates is properly raised in quo warranto proceedings.

And now, November 29, 1948, the petition and proceedings herein are quashed and the order of court entered herein November 10, 1948, upon the county board of elections is rescinded.