**S. H. FLETCHER and Joe Jennette, Appellants,**

v.

**Milton WILSON et al., Appellees.**

Court of Appeals of Kentucky.

June 1, 1973.

Harry B. Miller, Jr., Miller, Griffin & Marks, Lexington, for appellants.

Foster Ockerman, Martin, Ockerman & Brabant, C. Gibson Downing, Stoll, Keenon & Park, Lexington, for appellees.

CULLEN, Commissioner.

S. H. Fletcher, and Joe Jennette, alleging themselves to be "citizens, taxpayers, duly registered voters and duly qualified electors of the Democratic Party in Jessamine County, Kentucky" (Fletcher residing in Magisterial District No. 4 and Jennette in Magisterial District No. 5), brought suit in the Jessamine Circuit Court against a candidate for the Democratic nomination, in the primary election to be held on May 29, 1973, for the office of county judge, against four candidates for the Democratic nomination in that primary for the office of magistrate (one for District No. 2, two for District No. 4, and one for District No. 5), and against the county court clerk. The complaint alleged various deficiencies in the notification and declaration papers of the candidates, such as failure to designate the office sought, omission of addresses in the body of the declaration or in the electors' affidavit, failure of the electors' affidavit to certify that the candidate is qualified for the office, and failure to have the declaration or the electors' affidavit subscribed and sworn to. The relief sought was that each defendant candidate be declared not qualified to have his name placed on the primary ballot, and that the defendant clerk be enjoined from placing their names on the ballot.

The defendants moved to dismiss the complaint on the ground that the plaintiffs, not being candidates, had no standing to maintain the action. That motion was sustained and an order was entered dismissing the complaint. The plaintiffs are appealing here from that order.

The theory on which the complaint was dismissed was thus expressed in the order:

"it further appearing to the Court that the plaintiffs herein are not candidates in the Primary Election to be held in Jessamine County, Kentucky on May 29, 1973, for any of the offices mentioned in the complaint, and that they therefore do not have standing to bring and maintain the within styled action * * * "

It appears that the circuit court, and the attorneys for both sides, were under the impression, as stated in the brief for one group of the appellees, that there is a "long line of cases holding that citizens, taxpayers and electors * * * [have no] standing to maintain an action to enjoin the Clerk from placing the name of a candidate upon the ballot upon the ground that his * * * [declaration] papers are defective," and that there are "no cases decided in Kentucky under which citizens, taxpayers or voters have been held to have standing to maintain an action to enjoin the placing of a candidate's name on a primary ballot, or to otherwise question his qualifications for office." The truth is, however, that the only Kentucky cases that have involved the direct question of the right of a *voter* to bring an action to control the placing of a candidate's name *on the primary ballot* have upheld that right, and there are *no* cases denying the right.

The first case to reach this court, after the enactment in 1912 of the primary election law, was Hager v. Robinson (1913), 154 Ky. 489, 157 S.W. 1138. There, the county court clerk had refused to put on the primary ballot the name of E. W. Robinson as a candidate for the Republican nomination for assessor, because Robinson's petition failed to state that he was affiliated with the Republican Party and had supported its nominees at the previous

regular election. Robinson brought proceedings under Section 27 of the Primary Election Law (subsequently compiled as KRS 119.170) to compel the clerk to put his name on the ballot. Several *voters,* who were supporters of Robinson, brought a separate action, for an order of mandamus compelling the clerk to put Robinson's name on the ballot. Relief was denied in both actions, and appeals were sought to this court. It was held that Robinson had no right of appeal, because Section 27 of the Primary Election Law, under which he had brought his proceeding, expressly denied any right of appeal. However, this court held that the *voter-plaintiffs'* action was not under Section 27; that they had the right to bring such an action and the right to appeal from an adverse decision. The court said:

> "The right of appellees Jas. W. Turner and others to maintain this action is stronger than that of either of the plaintiffs in the cases cited. They are not only qualified voters and members of the political party of which Robinson seeks to be made the nominee at the approaching primary election, but they actually assisted in his attempt to get his name upon the ballot by tendering to the clerk, in support of his right to do so, the petition required by section 6 of the Primary Act, in doing which they were endeavoring to perform a duty they owed to their party and to the public as well. It can well be said, therefore, that the rejection of their petition and that of their candidate by the clerk, if without legal cause, as alleged, constituted a violation of their personal rights, and at the same time prevented them from performing a duty which they owed to their party and to the state of which they are citizens."

The holding in Hager, as concerns Section 27 of the Primary Election Law, was in effect that Section 27 was the *exclusive remedy for* candidates to keep an opposing candidate's name off the primary ballot, and it was a *remedy exclusively for* candidates, but it did not preclude an independent action by a voter.[1]

In Gardner v. Ray (1913), 154 Ky. 509, 157 S.W. 1147, the court made the same holding as in *Hager.*

Sixteen years later, in Schardein v. Harrison (1929) 230 Ky. 1, 18 S.W.2d 316, a *voter* brought a suit under the Declaratory Judgment Act to prevent the placing on the primary election ballot of the name of a candidate for the Republican nomination for mayor of Louisville, on the ground that the candidate was *ineligible* for the office. Upholding the right of the voter to maintain the suit, this court said:

> "A preliminary question is raised as to appellant's right to maintain this appeal, but it is without merit. True, actions upon the part of candidates relating to the preparation of ballots in primary elections are restricted to the circuit court, which in relation thereto is made the court of last resort. See Section 1550–27, Ky. Statutes. But the provisions of that section do not abridge the right of voters and taxpayers to maintain such actions. See Hager v. Robinson, 154 Ky. [489] 495, 157 S.W. 1138. A right that has since been enlarged under the comprehensive provisions of the Declaratory Judgment Act, section 639a of the Civil Code."

It is true that in Little v. Bogie (1945), 300 Ky. 668, 190 S.W.2d 26, *Schardein* was overruled to the extent that it conflicted with other cases cited in Little, but it is apparent that this action by the court was based on a complete misconception of the holding in *Schardein.* In Little, the Democratic nominee brought suit, *after the primary,* to enjoin the printing of the Republican nominee's name on the ballot for the *regular election,* on the ground that the

---

1. In Weller v. Muenninghoff (1913), 155 Ky. 77, 159 S.W. 632, the court said that Section 27 contemplated a summary, *ex parte* procedure.

latter was not *eligible* for the office. The court said:

"At the outset, we are confronted with the question of appellee's right to maintain the action. This question has been before the Court on numerous occasions; and, with one exception, Schardein v. Harrison, 230 Ky. 1, 18 S.W.2d 316, we have held that a nominee of one political party has no right, before the general election, to question the certificate of nomination of his opponent, where the notification, declaration, and certificate of nomination are valid on their faces. Wilson v. Tye, 122 Ky. 508, 92 S.W. 295, 29 Ky.Law Rep. 71, and Id., 126 Ky. 34; 102 S.W. 856, 31 Ky.Law Rep. 491; Hardin v. Horn, 184 Ky. 548, 212 S.W. 573; Morgan v. Adams, 250 Ky. 441, 63 S.W.2d 479; Hettel v. Furste, Clerk, 260 Ky. 844, 86 S.W.2d 1018; and Wooton v. Smith, 288 Ky. 48, 155 S.W.2d 466. * * *"

The cases cited as being contrary to Schardein all dealt with an attempt to question a *certificate of nomination,* after the primary. As hereinabove noted, *Schardein* involved a suit *before* the *primary,* to keep a candidate's name off the primary ballot. For reasons to be stated at a later point in this opinion, we think there is no conflict between *Schardein* and the other cases cited in *Little,* and there was no occasion to overrule *Schardein* to any extent.

*Hager, Gardner* and *Schardein* are the only Kentucky cases involving the direct issue of a voter's right to bring an action to control the placing of a candidate's name on the primary ballot, and they all upheld the right. *Schardein* was not overruled except to the extent that it conflicted with the other cases cited in *Little,* and since it did not conflict with those cases on the specific point here under discussion, it

continued to be authority on that point. Thus we find that all of the Kentucky cases on the point uphold the voter's right, rather than denying it.

The holdings in *Hager, Gardner* and *Schardein* are fully in accord with Stewart v. Burks (1964), Ky., 384 S.W.2d 316, where it was held that a voter could, by suit before the *general election,* question the sufficiency of the nominating petition of a candidate whose nomination was by petition rather than through a primary (for the office of member of a school board—see KRS 118.070).[2] The court there said:

" * * * We believe the public interest in the subject matter is such that any voter * * * who would be affected, though not specially, has standing in court to question the sufficiency of the nominating petition involved in this case. * * * "

Also consistent are Stiglitz v. Schardein (1931), 239 Ky. 799, 40 S.W.2d 315, holding that a voter could bring suit to attack the validity of a legislative redistricting Act (citing *Schardein* and *Hager* as authority), and Board of Registration Commissioners v. Campbell (1933), 251 Ky. 597, 65 S.W.2d 713, holding that a voter could bring suit challenging the validity of a registration law (also citing *Schardein* and *Hager*).

We recognize some inconsistency in Hettel v. Furste (1935), 260 Ky. 844, 86 S.W.2d 1018. There a candidate for the Republican nomination in the primary for the office of justice of the peace brought suit before the primary to enjoin the county court clerk from issuing a certificate of Democratic nomination to a person who was the only candidate for the Democratic nomination for the office but whose declaration papers allegedly were deficient. By

2. *Stewart* disposes of the appelles' contention that since only a candidate can bring a contest suit, only a candidate can bring a *pre*-election suit. Some 50 years before *Stewart,* in Frances v. Sturgill (1915), 163 Ky. 650, 174 S.W. 753, the

court said that probably a Republican voter could bring a pre-general election suit to question the validity of a nomination made by the governing authority of the Republican Party to fill a vacancy in one of its primary nominations.

amended complaint, the plaintiff sought also to sue in the capacity of a *voter*. The court did not appear to attach any significance to the plaintiff's claim of status as a voter, and simply held that section 27 of the Primary Election Law (later KRS 119.170) authorized a proceeding only by an *opposing* candidate for the party nomination in question. The court said that it did not know of any "provision of the primary election laws authorizing appellant to maintain such action." If *Hettel* could be considered a square holding that a *voter* cannot bring a pre-primary suit involving the sufficiency of declaration papers, it of course is inconsistent with *Hager, Gardner* and *Schardein*. But it did not squarely so hold, and it made no mention of *Hager* and *Gardner*. It is true that it undertook to distinguish *Schardein* on the ground that the latter case involved the question of a candidate's *eligibility* rather than the sufficiency of declaration papers, but that claimed distinction was not related to the question of the standing of a *voter* to sue.

Actually, a valid basis (not inconsistent with *Hager, Gardner and Schardein*) existed in *Hettel* for a holding that the plaintiff could not maintain the suit in the claimed status of a *voter*, the basis being that the plaintiff was not a qualified voter *in the Democratic primary* and therefore had no justiciable interest in the nomination.

The parties have referred to a great many other cases but every one of them involved a *post*-election suit (involving a primary or a general election). Those most relevant to the instant issue held that a *voter* cannot *contest* an election. See Davis v. Stahl (1941), 287 Ky. 629, 154 S. W.2d 736; Brandenburg v. Hurst (1942) 290 Ky. 592, 162 S.W.2d 223.[3] Those cases rest on the basic proposition, as stated in *Davis*, that:

"* * * there is no inherent power in the courts to pass on the validity of elections, or to try contested election cas-es, their authority being wholly statutory, and * * * the right to institute a contest must be found within the terms of the statute providing for contests. * * *"

That proposition arises out of Section 153 of the Kentucky Constitution which states that the General Assembly shall have power to provide by general law "for ascertaining the result of elections" and "for the trial of contested elections."

■ An election *contest* obviously is a *post*-election procedure, involving an election that has been held, as distinguished from a pre-election suit to determine whether a person may be voted on as a candidate. In the case of an office for which nomination is made through the primary, the only *pre*-election suit that can be brought by a *voter* is one preceding the *primary*, because once the primary has been held it determines who will be the qualified candidate in the general election (subject only to a *contest* of the primary). In the case of an office for which nomination is *not* through a primary (such as in Stewart v. Burks), the *pre*-election voter's suit may of course be brought before the *general election*.

■ We see no inconsistency of theory in this. The legislature has established the policy that once an election has been held, its results (which in the case of a primary determine who are the qualified candidates for the general election) are subject to challenge only by a *contest* brought by a defeated candidate for the office (or nomination). But the legislature has not denied to the *voter* the right of *pre*-election concern with the right of a person to have his name placed on the ballot as a candidate. This treatment evinces the rational theory that the voter should have a voice in determining who may become candidates, but not in determining the validity of the election results.

3.  Withrow v. Willis (1969) Ky., 447 S.W.2d 627, held that a 1966 Act did not change this rule.

■ Somewhat similar in principle are the cases holding that neither a *voter* nor a candidate of another political party can bring an independent suit, under the Declaratory Judgment Act or otherwise, after the primary to question the eligibility for office, or the sufficiency of the declaration papers, of a candidate who has been nominated in the primary. See Dietz v. Zimmer (1929), 231 Ky. 546, 21 S.W.2d 999; Little v. Bogie (1945), 300 Ky. 668, 190 S.W.2d 26; Aubrey v. Oak (1945), 300 Ky. 669, 190 S.W.2d 27; Wells v. Lewis (1945), 300 Ky. 675, 190 S.W.2d 26; Friley v. Becker (1945), 300 Ky. 749, 190 S.W.2d 355. In part, the decisions in those cases rested on the proposition that only a defeated candidate may maintain a *contest* suit. Also involved, however, was the policy, developed in the cases mentioned in the next paragraph of this opinion, that even in a proper contest suit, by a defeated candidate, questions should not be permitted to be raised as to the right of a person to be placed on the ballot as a candidate because such questions should be decided before the voting takes place. Nothing in these cases militates against the right of a voter to bring a *pre*-primary suit to raise the very questions which the cases hold cannot be raised *after* the primary.

In a number of cases involving a contest of a *primary* election, brought by a defeated candidate, it was held that the contestant could not raise any question as to the winner's qualifications for the office or as to the sufficiency of his declaration papers. See Weller v. Muenninghoff (1913), 155 Ky. 77, 159 S.W. 632; Wooten v. Smith (1941), 288 Ky. 48, 155 S.W.2d 466; Wells v. Lewis (1941), 300 Ky. 675, 190 S.W.2d 28; Wheeler v. Patrick (1921), 192 Ky. 529, 233 S.W. 1054; Bingham v. Smith (1925), 210 Ky. 256, 275 S.W. 811; Faulkner v. Asher (1927), 221 Ky. 272, 298 S.W. 691. These cases established the policy that questions of the kind stated above must be raised before the primary.

■ Some of the cases cited by the parties involved contests of *general elections*. In one, Rose v. Epperson (1938), 272 Ky. 765, 115 S.W.2d 336, the holding was that a *voter* could not contest a general election victory of a candidate. That holding simply followed the basic rule that only defeated candidates can contest elections. In other cases, the court held that in a contest of a general election, brought by a defeated candidate, the contestant cannot question the *eligibility* of the winner. Wilson v. Tye (1906) 122 Ky. 508, 92 S.W. 295; Wilson v. Tye (1907), 126 Ky. 34, 102 S.W. 856; Morgan v. Adams (1933), 250 Ky. 441, 63 S.W.2d 479; Pratt v. Adams (1933), 251 Ky. 381, 65 S.W.2d 91; Hart v. Rose (1934), 255 Ky. 576, 75 S.W.2d 43; Hardin v. Horn (1919), 184 Ky. 548, 212 S.W. 573. In some of these cases, and in Wells v. Lewis (1941), 300 Ky. 675, 190 S.W.2d 28, reference was made to the rule that only three persons have authority to bring suit to question the statutory or constitutional qualifications of a person *to hold office,* they being: A person who can show he is entitled to the office, the Attorney General, and the Commonwealth's Attorney. That rule, of course, has application only to the *ousting* of a person *from office,* and has no relation to the right to contest an election or to bring a *pre*-primary suit to question the qualifications of a candidate. As many times held, a defeated candidate in the general election does have the right to contest the election, with the object of having it declared void, even though he cannot be declared the winner. And of course the Attorney General and the Commonwealth's Attorney cannot bring a *contest* suit. So that rule is no authority for denying to a *voter* the right to bring a *pre*-primary suit in regard to the qualifications of a candidate.

We think that the real basis of the holding in the group of cases just above cited is that *eligibility* of a candidate for *nomination* or *election* should under the policy hereinbefore mentioned be determined be-

fore the voting takes place. The right to raise the matter for determination at that time is not limited to a "person who can show he is entitled to the office," because at that time the question of who will be entitled to the office has not been answered.

A case of somewhat novel features was Adams v. Magisterial District No. 5 (1934), 254 Ky. 113, 71 S.W.2d 21. There a *voter* was *contesting* an election on a *public question* (as he was authorized to do by statute, KRS 122.140). It was held that in such contest the voter could not "inquire into latent defects in the necessary steps preliminary to the calling of the election." That holding is consistent with the holding in the cases hereinbefore discussed, that questions related to the placing of the candidate's name on the ballot should be determined before the voting.

Likewise consistent is the decision in Hardin v. Horn (1919), 184 Ky. 548, 212 S.W. 573, that in a *contest* of a *general election,* the contestant cannot assert violations of the Corrupt Practices Act, by the winner, that occurred in the *primary*. This adheres to the rule that qualification to go on the ballot (which in the case of a general election has been determined by the uncontested result of a primary) cannot be raised after the election.

We recognize that in a number of cases, such as Francis v. Sturgill (1915), 163 Ky. 650, 174 S.W. 753, Justice v. Justice (1919), 184 Ky. 130, 211 S.W. 419, Hewlett v. Carter (1922), 194 Ky. 454, 239 S.W. 789, Whitney v. Skinner (1922), 194 Ky. 804, 241 S.W. 350, Ison v. Weddle (1928), 226 Ky. 201, 10 S.W.2d 814, and Kluemper v. Zimmer (1931), 240 Ky. 225, 41 S.W.2d 1111, it was held that the question of whether a candidate had met the requirements to be a candidate in the general election could be raised in a *contest* of the general election. In *Francis* the question was whether the candidate had validly been nominated by a political party to fill a vacancy in its primary nomination. In *Justice*

and in *Hewlett* the ground of contest was that the candidate, who had been nominated in the primary, had not filed his certificate of nomination within the required time. In *Whitney* the election of a city attorney in a city having the commission form of government was challenged on the ground that his nomination, by petition, was invalid because the law for such cities required that the nomination be by a special, non-partisan primary. In *Ison,* a nomination by petition for an office not embraced in the primary law was contested as being insufficient in form. In *Kluemper,* which involved an election for officers of a city having the commission form of government, whose nomination was by a special, nonpartisan primary, it was held that the general election could be contested on the ground that the winners had violated the corrupt practices law *in the primary*.

At first blush it would appear that the cases just cited are not consistent with the policy, indicated by the cases earlier discussed, that questions of the right of a candidate to be on the ballot should be decided before the voting takes place. Upon close analysis, one must conclude that there is indeed an inconsistency, attributable to an apparent assumption that a candidate has no right, before the general election, to question the right of an opposing candidate to be on the ballot. That assumption probably arose from the cases, such as Hardin v. Horn (1919), 184 Ky. 548, 212 S.W. 573, Hettel v. Furste (1935), 260 Ky. 844, 86 S.W.2d 1018, and Little v. Bogie (1941), 300 Ky. 668, 190 S.W.2d 26, holding that a candidate of another party cannot question the validity of the *certificate of nomination* issued to an opponent as the winner of a *partisan primary* election. The theory of those cases was that this was a matter of *contest* which under the specific terms of the primary election law only a defeated candidate for the nomination could maintain. It appears that there was some feeling also that since there was no provision in the general election law, comparable to original section 27 of the primary election

law, expressly authorizing a pre-election challenge of the right of a candidate to be on the ballot, no such challenge was authorized before the general election.

When the court, in 1964, in Stewart v. Burks, Ky., 384 S.W.2d 316 (hereinbefore mentioned), finally held that a *voter* could bring a suit before the general election to question whether a candidate nominated by petition was entitled to be on the ballot, it appears that the door may have been opened to pre-general election suits (within limitations hereinafter discussed) by *candidates* also, because there would seem to be no valid reason for denying a voter the right to bring the suit simply because he is also a candidate. Thus, there are indications that the policy, that questions of the right of a candidate to be on the ballot should be decided before the voting takes place, could be extended so as to preclude postelection contests of general elections on such grounds. (We do not so decide, however, because the decision of that question is not essential in the instant case.)

■ We note that in none of the cases we have just been discussing, which held that certain questions could be raised in contests of general elections as to the right of a candidate to be on the ballot, was there any question allowed to be raised as to the *validity of a certificate of nomination received in a partisan primary*. It appears that the law is firmly settled that nomination by partisan primary is strictly a *party* matter, and a candidate of another party has no right at any stage to question the validity of the nomination. So any extension, to general elections, of the policy that questions of the right of a candidate to be on the ballot should be raised before the voting takes place, would not be expected to create any new right to question the validity of a certificate of nomination received in a partisan primary.

All of the cases hereinbefore discussed arose before the 1972 revision of the election laws, by Chapter 188 of the Acts of 1972. In that revision, former KRS 119.-170 (section 27 of the original Primary Election Law) was repealed. The only section of the 1972 Act that has any comparable features is section 48, compiled as KRS 119.085. That section, which it appears applies only to primary elections (although it is not so limited by any express language), provides that "Any candidate may question the bona fides of any other candidate by summary proceedings," etc., and it defines a "bona fide" candidate as one "who is seeking nomination according to law, who honestly seeks the office," etc.

It is argued by the appellees herein that KRS 119.085 by implication precludes such an action by a *voter* as the one here before us. That argument rests on the basis that former KRS 119.170 had been held to make such an implied preclusion. As hereinbefore exposed, however, KRS 119.170 had not been so construed. KRS 119.085, by its provisions, furnishes less basis for the claimed implication than did KRS 119.-170, so we are not persuaded that KRS 119.085 carries any such implication.

■ It is our conclusion that under the prevailing precedents, a voter *who is qualified to vote for the nomination* in issue has a sufficient justiciable interest to entitle him to maintain a *pre*-primary suit for a determination of the validity of the declaration papers of a candidate for nomination at a primary election. The two plaintiffs in the instant case, being qualified Democratic voters in Jessamine County, both were qualified to vote in the Democratic primary for the candidates for nomination for county judge. One of the plaintiffs, being a resident of Magisterial District No. 4, was qualified to vote for the candidates for nomination for Magistrate in that district, and the other plaintiff, being a resident of Magisterial District No. 5, was qualified to vote for the candidates for nomination for magistrate in that district. Neither of the plaintiffs, however, was qualified to vote for the candidates for magistrate in Magisterial District No. 2. Thus the circuit court should not

have dismissed the complaint, except as it related to the candidate for magistrate in Magisterial District No. 2.

We do not pass on the question of whether the declaration papers of any of the defendant candidates were deficient.

The judgment is affirmed to the extent that it dismisses the complaint as to the defendant Broaddus. Otherwise it is reversed, with directions for further proceedings in conformity with this opinion.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEPHENSON and STEINFELD, JJ., sitting.

All concur except STEPHENSON, J.