RENDERED: APRIL 28, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0520-I
2020-SC-0544-I

DAVID M. WARD; AND KENTUCKY
ASSOCIATION OF CRIMINAL DEFENSE
LAWYERS, INC.

APPELLANTS/
CROSS-APPELLEES

ON APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
NO. 20-CI-00471

V.

SENATOR WHITNEY WESTERFIELD, IN HIS
PERSONAL AND OFFICIAL CAPACITIES;
MARSY'S LAW FOR KENTUCKY, LLC; AND
COMMONWEALTH OF KENTUCKY, EX REL.
ATTORNEY GENERAL DANIEL CAMERON

APPELLEES/
CROSS-APPELLANTS

AND

SECRETARY OF STATE, EX REL. MICHAEL G.
ADAMS, IN HIS OFFICIAL CAPACITY; THE
KENTUCKY STATE BOARD OF ELECTIONS,
EX REL. MICHAEL G. ADAMS, IN HIS
OFFICIAL CAPACITY AS CHIEF ELECTION
OFFICIAL FOR THE COMMONWEALTH; AND
A.B. CHANDLER III, IN HIS OFFICIAL
CAPACITY AS CHAIRMAN

APPELLEES/
CROSS-APPELLEES

1

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>VACATING AND REMANDING</u>**

The parties appeal a ruling of the Franklin Circuit Court concerning the second attempt to include Marsy's Law, an amendment related to crime victims' rights, in the Kentucky Constitution. We accepted transfer from the Court of Appeals because this case raises important questions regarding a challenge to a constitutional ballot initiative. After careful review of the record, we conclude that Appellants' claims must be dismissed for lack of standing.

## I. FACTS AND PROCEDURAL BACKGROUND

In 2018, the General Assembly proposed, and Kentucky voters ratified, the constitutional amendment known as Marsy's Law. After a legal challenge, this Court invalidated the 2018 amendment because the entire text of the proposed amendment was not placed on the ballot.[1]

In 2020, the General Assembly again proposed the Marsy's Law constitutional amendment. Appellants[2] sued the Secretary of State, the State Board of Elections, and the Chairperson of the State Board of Elections before the general election. The Complaint sought declaratory and injunctive relief either prohibiting Marsy's Law from appearing on the ballot or, in the alternative, preventing tabulation of votes on ratification of the amendment.

---

[1] *Westerfield v. Ward,* 599 S.W.3d 738 (Ky. 2019) (hereinafter "*Ward I*").

[2] The Appellants in this action are David M. Ward, a resident and taxpayer in this Commonwealth, and the Kentucky Association of Criminal Defense Lawyers ("KACDL"), a nonprofit corporation advocating on behalf of attorneys engaged in the defense of criminal prosecutions in the Court of Justice (collectively "Appellants").

Appellants also brought facial challenges to the legality of substantive provisions of Marsy's Law.

The Kentucky Attorney General, Marsy's Law for Kentucky, LLC, and Senator Whitney Westerfield intervened as co-defendants. The Plaintiffs and Intervening Defendants filed cross-motions for summary judgment. In October 2020, the trial court granted partial summary judgment in favor of the Intervening Defendants. The trial court ruled in favor of the Intervening Defendants on Plaintiffs' procedural claims. Still, the trial court concluded that Appellants' facial challenges to Marsy's Law were not ripe because the amendment had not yet been ratified by Kentucky voters. The trial court withheld ruling on Appellants' facial challenges and held those claims in abeyance.

The parties filed cross-appeals. The Court of Appeals recommended transfer of those appeals to this Court. This Court accepted transfer and denied Appellants' motion for emergency relief. In their response briefs to this Court, Appellees challenged the justiciability of Appellants' claims. While this appeal was pending, Kentucky voters ratified the Marsy's Law constitutional amendment. We now address the parties' arguments on appeal.

## II. STANDARD OF REVIEW

"We review the trial court's issuance of summary judgment de novo and any factual findings will be upheld if supported by substantial evidence and

3

not clearly erroneous."[3]  Whether Appellants have standing is a jurisdictional question of law that is reviewed de novo.[4]

### III.  ANALYSIS

Section 112 of the Kentucky Constitution gives circuit courts original jurisdiction in all *justiciable* causes not vested in another court.[5]  This Court has held, and reaffirmed, that "the existence of a plaintiff's standing is a constitutional requirement to prosecute any action in the courts of this Commonwealth."[6]  We have adopted the federal standard for standing espoused in *Lujan v. Defenders of Wildlife.*[7]

To have constitutional standing, a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[8] The party invoking jurisdiction bears the burden of establishing the elements of standing.[9]

---

[3] *Adams v. Sietsema*, 533 S.W.3d 172, 177 (Ky. 2017).

[4] *Commonwealth v. B.H.*, 548 S.W.3d 238, 242 (Ky. 2018) ("Jurisdiction is a question of law, and our review is de novo.").

[5] "The Circuit Court shall have original jurisdiction of all justiciable causes not vested in some other court.  It shall have such appellate jurisdiction as may be provided by law."  Ky. Const. § 112(5).

[6] *Commonwealth Cabinet for Health & Fam. Servs., Dep't for Medicaid Servs. v. Sexton ex rel. Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 188 (Ky. 2018); *see also Beshear v. Ridgeway*, ___S.W.3d___, 2021-SC-0225-I, 2022 WL 575442 at *1, 3 (Ky. Feb. 24, 2022); *Overstreet v. Mayberry*, 603 S.W.3d 244, 252 (Ky. 2020); *Commonwealth v. Bredhold*, 599 S.W.3d 409, 414 (Ky. 2020).

[7] *Sexton*, 566 S.W.3d at 188 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

[8] *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted).

[9] *Id.* at 561.

4

### A. Appellants have not established constitutional standing as citizens and voters.

Appellants have not met their burden of establishing that the alleged injuries harmed them in a concrete and particularized manner. Instead, Appellants' claims constitute nonjusticiable generalized grievances because the harms they assert are shared in equal measure by all citizens of the Commonwealth.

One of the major principles underlying the standing doctrine is the prohibition against "generalized grievances."[10] "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."[11]

Kentucky courts recognize the prohibition against generalized grievances. In *Sexton*, we explained that the prohibition against generalized grievances was one of "two major federal prudential standing principles."[12] Even before *Sexton* both this Court and the Kentucky Court of Appeals recognized the prohibition against generalized grievances as part of our standing jurisprudence.[13] And

---

[10] *Sexton*, 566 S.W.3d at 193.

[11] *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Fed. Election Comm'n v. Akins*, 524 U.S. 11, 23 (1998); *Young v. Lundergan*, No. 2015-CA-431-MR, 2016 WL 1068978, at *4 (Ky. App. Mar. 18, 2016).

[12] *Sexton*, 566 S.W.3d at 193.

[13] *See Lawson v. Attorney Gen.*, 415 S.W.3d 59, 67 (Ky. 2013) (explaining that standing can refer to various judicially-related limitations on the exercise of jurisdiction, such as barring adjudication of generalized grievances); *Young*, 2016 WL 1068978, at *4 (holding that the injury alleged by a voter was a generalized grievance because it was common to other citizens); *see also* Wyatt Sassman, *A Survey of Constitutional Standing in State Courts*, 8 Ky. J. Equine, Agric. & Nat. Resources L.

after *Sexton*, our Court has reiterated that to have standing a plaintiff must have *personally* suffered some actual or threatened injury.[14]

Moreover, persuasive federal authority is helpful in defining the parameters of the prohibition against generalized grievances. "To have standing, a litigant must seek relief for an injury that affects him [or her] in a 'personal and individual way.'"[15] The litigant "must possess a 'direct stake in the outcome' of the case."[16] A litigant raising a generally available grievance about government, no matter how sincere, and claiming only harm to his and every other citizen's interest in the proper application of the laws, does not state a justiciable case or controversy.[17]

Appellants contend that they have standing as citizens and voters. But Appellants' Complaint does not assert standing based on status as a voter. The Complaint says that "Plaintiff David M. Ward is a resident of this Commonwealth who pays taxes to the Commonwealth." Furthermore, the

---

349, 369-70 (2016) (explaining that, before *Sexton*, standing in Kentucky appeared "to be a self-imposed restraint based on a prohibition against generalized grievances").

[14] *Overstreet*, 603 S.W.3d at 252.

[15] *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (quoting *Lujan*, 504 U.S. at 560).

[16] *Id.* (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)).

[17] *Id.* (citing *Lujan*, 504 U.S. at 573–74); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam ) ("Our refusal to serve as a forum for generalized grievances has a lengthy pedigree."); *Allen v. Wright*, 468 U.S. 737, 754 (1984) ("[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the [judicial] power must be able to show . . . that he has sustained or is immediately in danger of sustaining some direct injury . . . and not merely that he suffers in some indefinite way in common with people generally.").

Complaint does not allege that members of KACDL are voters. The Complaint is devoid of any mention of Appellants being harmed as voters.

Even accepting that Appellants are voters and citizens, Appellants do not allege a concrete and particularized injury. Appellants do not contend that they misunderstood the contents of the Marsy's Law ballot question. Nor have Appellants argued that they are personally impacted by the substantive provisions in Marsy's Law. Instead, Appellants advance hypothetical harms on behalf of unspecified injured voters and citizens. As such, Appellants have not established that they are impacted by Marsy's Law in a "personal and individualized way."[18]

Appellants contend that "[a]ny adult citizen of Kentucky has standing to challenge the sufficiency of a proposed Constitutional amendment because every citizen will be affected by it after ratification." But Appellants' statement—that every adult citizen in Kentucky has standing to challenge the sufficiency of the Marsy's Law constitutional amendment—essentially concedes that their alleged injuries constitute nonjusticiable generalized grievances. Appellants admit that any Kentuckian could assert injuries identical to those contained in their Complaint. As such, Appellants are not directly affected by Marsy's Law.

Appellants invite this Court to create a special standing doctrine for voters alleging injury in the context of a constitutional ballot initiative. It is

---

[18] *See Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (quoting *Lujan*, 504 U.S. at 560).

true that Kentucky voters play a unique role in ratifying constitutional ballot initiatives. Yet, Appellants have cited no authority supporting their contention that voters challenging the procedural and substantive legality of constitutional ballot initiatives should be exempted from the requirement of alleging an injury in fact. The Kentucky Constitution limits the jurisdiction of Kentucky courts to justiciable causes. So we must decline Appellants' invitation because the allegation of a concrete and particularized injury is a constitutional prerequisite to prosecution of any action in the courts of this Commonwealth.

Additionally, our holding in *Ward I* has no impact on our analysis of constitutional standing here. In *Ward I*, we considered whether this Court had authority to address the parties' claims on the merits based on separation of powers.[19] This Court did not, however, directly analyze whether Ward or KACDL had constitutional standing under *Sexton* and its progeny. While constitutional standing was raised before the circuit court in *Ward I*, the issue of constitutional standing was abandoned on appeal.[20] As such, we assumed, without deciding, that KACDL had standing based on the same standing arguments advanced by Appellants in *Ward I*.[21] Since we did not render a ruling on constitutional standing in *Ward I*, the issue of constitutional standing related to these Appellants presents an issue of first impression for our Court.

---

[19] *Ward I*, 599 S.W.3d at 744–46.

[20] *Id.* at 746 n.16.

[21] *Id.*

8

We recognize that at least one case from this Court, *Fletcher v. Wilson*,[22] suggests that voters may have pre-election standing to challenge ballot access.[23] *Fletcher* held that two duly qualified Democratic Party electors had standing to challenge primary election ballot access of four Democratic candidates for local office.[24] But the holding in *Fletcher* has no direct impact on the question of constitutional standing in this case.

First, the subject matter and scope of the alleged injury in *Fletcher* is distinct from this case. *Fletcher* dealt with whether voters had pre-election standing to challenge primary ballot access of candidates for local office. Essentially, *Fletcher* and its progeny stand for the proposition that questions of "*eligibility for a candidate* for nomination or election should . . . be determined before the voting takes place."[25] Alternatively, this case deals with procedural and facial challenges to a constitutional ballot initiative that can be brought by any citizen in the Commonwealth. *Fletcher* neither held that voters enjoy special constitutional standing in the context of election challenges nor evaluated standing in the context of a voter challenge to a constitutional ballot initiative. Instead, *Fletcher*'s analysis was limited to the narrow question of

---

[22] 495 S.W.2d 787 (Ky. 1973).

[23] Kentucky Revised Statutes (KRS) 118.176 allows for challenges to a candidate's bona fide qualifications prior to an election. We do not consider statutory standing to challenge ballot access or question a candidate's qualifications in this decision.

[24] *Fletcher*, 495 S.W.2d at 794–75.

[25] *Id.* at 792 (emphasis added).

whether the voters and citizens in that case had standing pre-election to challenge candidate ballot access.

Second, *Fletcher* was decided in 1973, decades before we clarified our standing jurisprudence in *Sexton*. In *Sexton*, we made clear that constitutional standing is a jurisdictional prerequisite to bring a justiciable cause of action. As a result, all litigants, including voters, must allege a concrete and particularized injury-in-fact to invoke the jurisdiction of Kentucky courts. Concluding that Appellants have standing to challenge the Marsy's Law ballot initiative based on *Fletcher* would constitute a sweeping expansion of the holding in *Fletcher* and would be squarely inconsistent with *Sexton* and the series of recent cases from this Court that have followed its rule.

Similarly, the holding of the Kentucky Court of Appeals in *Chandler v. Winchester*[26] has no impact on the question presented here. *Chandler* examined whether the Attorney General could challenge a constitutional ballot initiative concerning the budgets of local governments under Kentucky Revised Statute (KRS) 120.280. The Court of Appeals concluded that the fifteen-day post-election limitation period for contesting a constitutional ballot initiative in KRS 120.280(1) applied and that the Attorney General's challenge to the election two years later was time-barred.[27] That case is irrelevant here because

---

[26] 973 S.W.3d 78 (Ky. App. 1998).

[27] *Id.* at 82.

there is no evidence or allegation that Appellants challenged the Marsy's Law amendment under KRS 120.280.[28]

Furthermore, the fact that Appellants sought declaratory relief has no bearing on constitutional standing in this matter. It is true that "[t]he [Declaratory Judgment] Act allows courts to determine a litigant's rights before harm occurs."[29] Even so, litigants may not establish constitutional standing by simply seeking declaratory relief. Instead, "[a]n actual, justiciable controversy is a condition precedent to an action under our Declaratory Judgment Act."[30] As such, Appellants must have constitutional standing to bring an action, regardless of the type of relief sought.

Lastly, the concept of irreparable harm is irrelevant to the question of constitutional standing. Appellants cite persuasive federal authority for the proposition that deprivation of constitutional rights causes irreparable harm. The authorities cited by Appellants stand for the proposition "that when reviewing a *motion for a preliminary injunction*, if it is found that a

---

[28] We do not consider the existence of statutory standing under KRS 120.280 because we are unaware of any statutory contest to the Marsy's Law constitutional ballot initiative under KRS 120.280(1).

[29] *Commonwealth v. Ky. Ret. Sys.*, 396 S.W.3d 833, 839 (Ky. 2013).

[30] *Cameron v. Beshear*, 628 S.W.3d 61, 68 (Ky. 2021) (internal quotations and citations omitted). *Cameron* supports the proposition that constitutional standing is an essential element of a justiciable cause of action, even in declaratory judgment actions. *See id.* at 68. Additionally, in *Cameron,* we considered the narrow question of when the Governor may sue to challenge an infringement of his asserted constitutional authority. The questions presented by this case—whether these Appellants have constitutional and taxpayer standing to bring procedural and facial challenges to a constitutional ballot initiative—are markedly different than the issues presented in *Cameron.*

11

constitutional right is being threatened or impaired, *a finding of irreparable injury* is mandated."[31]  So, if a constitutional right is being threatened or impaired, it will satisfy the first factor of the four-factor federal preliminary-injunction standard.  But this case is not before the Court on review of a preliminary injunction.  The relevant question on appeal is whether Appellants have suffered a sufficiently personal and direct injury to confer constitutional standing—not whether Appellants demonstrated that they would suffer irreparable harm without injunctive relief.

That is not to say that no citizens or voters have standing to bring similar claims.  At oral argument, Appellees conceded that a voter alleging that that he or she misunderstood a constitutional ballot question would likely have standing to challenge a constitutional ballot proposal.  That same voter may have the ability to bring a pre-election challenge once the ballot question is finalized or published.  Additionally, a criminal defendant, crime victim, or other participant in the criminal-justice process may have standing to challenge the substantive provisions of Marsy's Law.  Finally, certain government officials, such as the Attorney General, Secretary of State, and members of the Board of Elections may have standing to challenge procedural defects surrounding enactment of a constitutional ballot initiative.  We need not resolve such advisory questions here.  Our analysis in this case is limited to whether *these Appellants* have standing as citizens and voters on *this* record.

---

[31] *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (emphasis added); *see also* 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. 2020).

12

Ultimately, Appellants lack standing as citizens and voters because they have not demonstrated a concrete and particularized injury that is not shared with all Kentucky citizens and voters.

**B. Appellants have not demonstrated that they have taxpayer standing.**

Appellants also contend that they have standing as taxpayers. It is true that Kentucky courts recognize taxpayer standing in certain circumstances as a matter of equity.[32] Most cases involving taxpayer standing involve litigants suing governmental entities or their agents to challenge the propriety of city, county, or state expenditure of public funds.[33]

Of course, since government revenue is generated by taxes, all government action necessarily involves some tangential relationship to taxes and the expenditure of public funds. But that fact alone cannot confer taxpayer standing. Our concept of constitutional standing would be eviscerated if litigants could challenge any government action based on an attenuated relationship between the harm alleged as a result of the government action and the general expenditure of public funds to support government functions. Rather, justiciability in the context of a taxpayer's action requires that the taxpayer represents an interest that is direct, pecuniary, and substantial.[34]

---

[32] *See Sexton*, 566 S.W.3d at 194 n.33; *see also Overstreet*, 603 S.W.3d at 263.

[33] *See Overstreet*, 603 S.W.3d at 263.

[34] *Cooper v. Kentuckian Citizen*, 258 S.W.2d 695, 696 (Ky. 1953); *see also Doremus v. Board of Ed. of Borough of Hawthorne*, 342 U.S. 429, 433–35 (1952); *Rosenbalm v. Commercial Bank of Middlesboro*, 838 S.W.2d 423, 428 (Ky. App. 1992).

Here, Appellants do not have an interest that is sufficiently direct, pecuniary, and substantial to invoke taxpayer standing. In their procedural claims, Appellants argue that the Legislature failed to follow Kentucky law concerning the enactment and referral of the Marsy's Law ballot initiative to Kentucky voters; therefore, Appellants contend that no election should have been held and any resulting expenditure of public funds to place the initiative on the ballot was improper. But Appellants' procedural claims are too attenuated from the expenditure of public funds for the invocation of taxpayer standing. Appellants have no direct, pecuniary, or substantial interest in the expenditure of public funds on the alleged illegal election that is not shared in equal part with every taxpayer in this Commonwealth.

Additionally, Appellants do not actually challenge the propriety of any expenditure of public funds in any of their facial challenges. For instance, Appellants note that Marsy's Law grants victims the right to representation by counsel but contend that Marsy's Law is unclear if counsel must be appointed for indigent victims and, if so, how appointed counsel will be compensated. Appellants acknowledge that it is *unclear* if counsel must be appointed for indigent victims in criminal matters under Marsy's Law. Thus, by Appellants' own admission, it is unclear if any expenditure of public funds is required in order to implement this provision of Marsy's Law.

Furthermore, Appellants acknowledge that no such expenditure of public funds has been made. Appellants do not challenge government funding of counsel for indigent victims. Instead, they complain that the General Assembly

14

failed to make an appropriation to support appointment of counsel to indigent victims. As a result, this facial claim does not challenge the propriety of the expenditure of public funds.

Appellants cite *Stiglitz v. Schardien*[35] and its progeny for the proposition that taxpayers have standing to challenge a legislative act that infringes upon the rights of a citizen, taxpayer, and voter. *Stiglitz*, a 1931 case, held that citizens, taxpayers, and voters had standing to challenge acts that reapportioned state legislative districts because the acts infringed on citizens' right to equal representation.[36] But the *Stiglitz* court did not discuss citizen, voter, and taxpayer standing as distinct concepts. *Stiglitz* did not hold that taxpayers have blanket standing to challenge any legislative act regardless of the existence of a pecuniary interest in the challenged expenditure of public funds. Instead, *Stiglitz*'s holding on standing in the context of a challenge to redistricting legislation relies heavily on the fact that the plaintiffs were citizens and voters, not that those plaintiffs were taxpayers.[37] As such, *Stiglitz* provides little support for Appellants' arguments that they have taxpayer standing in this case.[38]

---

[35] 40 S.W.2d 315 (Ky. 1931).

[36] *Id.* at 317–18.

[37] *See Beauchamp v. Silk,* 120 S.W.2d 765, 766–67 (Ky. 1938) ("That (*Stiglitz*) case, perhaps involved more of a political than a pecuniary right of the plaintiff therein[.]").

[38] *Beauchamp* cites *Stiglitz* for the proposition that citizens, taxpayers, and voters have standing to bring a lawsuit to prevent enforcement of a void legislative act. *See Beauchamp,* 120 S.W.2d at 766–67. But *Beauchamp* is unpersuasive for the same reasons as *Stiglitz*. Neither case engages in any reasoned analysis about constitutional and taxpayer standing as distinct doctrines. And neither case

15

Appellants also cite *State Text-Book Commission v. Weathers*[39] in support of their contention that they have taxpayer standing. In *Weathers,* a private citizen sought a writ of mandamus alleging that the state text-book commission violated numerous provisions of the statute defining the commission's duties.[40] The Court concluded that Weathers had standing to bring the mandamus action as a private citizen seeking to enforce a public duty owed to the public.[41] In so holding, the Court noted that the petition did not allege that Weathers was a taxpayer.[42] Instead, the petition "allege[d] his citizenship in the state, and that he [was] a patron of its common schools, the first showing him to be a member of the state, and the last showing him to have a direct interest in the maintenance of its common schools, saying nothing of his being a contributor to the expense of such maintenance."[43] *Weathers* did not hold that taxpayers have blanket standing to challenge a legislative act without showing some special of pecuniary interest in the alleged improper expenditure of public funds. As a result, *Weathers* is unavailing here.

Of course, constitutional and taxpayer standing are not dissonant concepts. Under Kentucky law, taxpayer standing may be properly invoked in

---

considered taxpayer standing in the context of a challenge to a constitutional ballot initiative. As such, neither *Stiglitz* nor *Beauchamp* is dispositive on the issue of taxpayer standing.

[39] 213 S.W. 207 (Ky. 1919).

[40] *Id.* at 208.

[41] *Id.* at 209.

[42] *Id.*

[43] *Id.*

circumstances in which a litigant challenges the propriety of expenditure of public funds.[44] Still, it bears repeating that litigants seeking to invoke taxpayer standing must demonstrate that they represent an interest that is direct, pecuniary, and substantial.[45] A direct, pecuniary, and substantial interest on the part of these Appellants is lacking here.

In sum, Appellants have neither cited nor are we aware of any authority granting taxpayer standing in similar circumstances to those presented here. As such, Appellants do not have standing as taxpayers to bring their asserted claims.[46]

## C. Our holding on standing here has no impact on our prior decision in *Ward I.*

Our conclusion that Appellants lack standing in this action has no impact on the precedential effect of our decision in *Ward I.* It is true that *Ward I* involved similar claims and included similarly situated parties as those in this action. Even so, the issues of constitutional and taxpayer standing were neither challenged nor discussed in *Ward I.* The existence of unaddressed jurisdictional defects in a previous action has no precedential effect.[47] At bottom, *Ward I* and the present case involve two closely related, yet distinct

---

[44] *See Sexton,* 566 S.W.3d at 194 n.33; *see also Overstreet,* 603 S.W.3d at 263.

[45] *See Cooper v. Kentuckian Citizen,* 258 S.W.2d at 696.

[46] Appellants have not asserted associational or representative standing on the part of Appellant KACDL. As a result, we do not consider associational or representative standing here.

[47] *See Lewis v. Casey,* 518 U.S. 343, 352 n.2 (1996) ("[S]tanding was neither challenged nor discussed in that case, and we have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect.").

17

constitutional ballot initiatives.  In *Ward I,* this Court reached a final, non-appealable judgment, which remains good law.

## IV.  CONCLUSION

After carefully reviewing the record, we conclude that Appellants lack constitutional standing to bring their claims because Appellants failed to allege a concrete and particularized injury-in-fact on this record.  Appellants have also failed to demonstrate that they have taxpayer standing.  As a result, Appellants' claims constitute nonjusticiable generalized grievances.  The judgment of the Franklin Circuit Court is vacated, and this matter is remanded with instruction to dismiss the action in its entirety without prejudice.

All sitting.  Conley, Hughes, Keller, Lambert, and Nickell, JJ., concur. VanMeter, J., concurs in result only by separate opinion.

VANMETER, J., CONCURRING IN RESULT ONLY:  In *Sexton,* we established the *mandatory constitutional requirement* that justiciability/standing is properly considered at every level of the judicial process.  566 S.W.3d at 196-97.  We decided *Ward I* nine months later.[48] Notwithstanding the *Sexton* mandate, we glossed over and ignored jurisdictional standing in *Ward I* and proceeded to decide the merits.[49]

---

[48] *Sexton* was initially rendered in September 2018; *Ward I* was initially rendered in June 2019.  Petitions for rehearing were filed and denied in each case, but *Sexton* was finally decided four months before the initial rendition date for *Ward I.*

[49] *Ward I* contains the statement language that "we find the constitutional challenges to the proposed amendment in this case to be justiciable."  599 S.W.3d at 745.  But that holding was to address Sen. Westerfield's argument that the proposal and adoption of a constitutional amendment was a non-justiciable political question.

Admittedly, we noted that the challenges to standing had been dropped, 599 S.W.3d at 746 n. 16, but this implicit affirmation of standing comported with longstanding recognition of voter standing to challenge ballot access. *See Fletcher v Wilson*, 495 S.W.2d 787 (Ky. 1973) (discussing case law back to 1913); *see also Gatewood v. Matthews*, 403 S.W.2d 716 (Ky. 1966) (addressing pre-election challenge to proposed revision to the Kentucky constitution). The standing issue in this case, voter standing to challenge ballot access of constitutional amendment, is functionally no different than the standing issue directly addressed in *Fletcher*, i.e., voter standing to challenge a candidate's ballot access. I would recognize the appellants' standing in this case, independently of any statutory challenge under KRS 120.250.

That noted, I concur in the majority's result which tacitly upholds the amendment as approved by the voters of the Commonwealth, since, as practical matter, no one will have properly challenged its enactment. My review of the briefs and the record is that the appellants' challenge fails on the merits.

COUNSEL FOR APPELLANT/CROSS-APPELLEE DAVID M. WARD:

J. David Niehaus

Virginia H. Snell
Wyatt, Tarrant & Combs, LLP

COUNSEL FOR APPELLANT/CROSS-APPELLEE KENTUCKY ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, INC.:

Michael R. Mazzoli
Cox & Mazzoli, PLLC

COUNSEL FOR APPELLEE/CROSS-APPELLANT MARSY'S LAW FOR KENTUCKY, LLC:

John C. Roach
W. Keith Ransdell
Ransdell, Roach & Royse, PLLC


COUNSEL FOR APPELLEE/CROSS-APPELLANT SENATOR WHITNEY WESTERFIELD:

David Fleenor
General Counsel
Office of the Senate President


COUNSEL FOR APPELLEE/CROSS-APPELLANT COMMONWEALTH OF KENTUCKY EX REL. ATTORNEY GENERAL DANIEL CAMERON:

Matthew F. Kuhn
Brett R. Nolan
Office of the Solicitor General


COUNSEL FOR APPELLEE/CROSS-APPELLEE MICHAEL G. ADAMS, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE:

R. Kent Westberry
Bridget M. Bush
Landrum & Shouse LLP


COUNSEL FOR APPELLEE/CROSS-APPELLEE A.B. CHANDLER, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE KENTUCKY STATE BOARD OF ELECTIONS:

Taylor A. Brown
General Counsel
State Board of Elections